MATTER OF LAM

In Deportation Proceedings

A-16032555

*Decided by Board March 24, 1981*

(1) An alien may qualify for asylum under the Refugee Act of 1980 if he establishes that he is a "refugee" within the meaning of section 101(a)(42)(A) of the Immigration and Nationality Act, 8 U.S.C. 1101(a)(42)(A), that is, that he has a well-founded fear of persecution in the country of his nationality, or the country where he last resided, on account of race, religion, nationality, membership in a particular social group, or political opinion.

(2) Where a finding has been made that an alien's life or freedom would be threatened in a given country, and that his deportation to that country should thus be withheld under section 243(h) of the Act, 8 U.S.C. 1253(h), then it should also be found that this alien has a well-founded fear of persecution in that country for asylum purposes.

(3) An alien granted asylum may, after one year, apply under section 209, 8 U.S.C. 1159, for adjustment of status, but an alien who has been granted withholding of deportation has no such means for becoming a permanent resident.

(4) "Firm resettlement," although not specifically provided for in the statutes prior to the 1980 Refugee Act, is a concept which has long been part of our laws relating to refugees. *See Rosenberg v. Yee Chien Woo*, 402 U.S. 49 (1971).

(5) An important distinction between withholding of deportation and asylum is that the concept of firm resettlement is not relevant to section 243(h) applications, as a grant of that relief bars deportation to only a single country, while firm resettlement is crucial to asylum applications, as asylum in the United States will not even be granted if an alien has been firmly resettled in a third place.

(6) Where the evidence of firm resettlement in Hong Kong is ambiguous, in view of the births of the alien's children in the People's Republic of China subsequent to his flight from that country to Hong Kong, and where the question of firm resettlement was not reached at the hearing below, the record is remanded to the immigration judge to enable the parties to present evidence on that issue.

(7) The fear of a Communist takeover of Hong Kong is purely speculative, and where this was the only basis for the respondent's withholding application as to Hong Kong, withholding from that place was properly denied.

CHARGE:

Order: Act of 1952—Sec. 241(a)(2) [8 U.S.C. 1251(a)(2)]—Nonimmigrant—remained longer than permitted

ON BEHALF OF RESPONDENT:
Jules Coven, Esquire
Lebenkoff and Coven
One East 42nd Street
New York, New York 10017

ON BEHALF OF SERVICE:
Gerald S. Hurwitz
Appellate Trial Attorney

Interim Decision #2857

By: Milhollan, Chairman; Maniatis, and Maguire, Board Members. Concurring and Dissenting Opinion: Appleman, Board Member

In a decision dated September 24, 1979, an immigration judge found the respondent deportable as charged, granted his application for withholding of deportation from the People's Republic of China, pursuant to section 243(h) of the Immigration and Nationality Act, 8 U.S.C. 1253(h), denied a 243(h) application from Hong Kong, and denied asylum. The respondent's application for voluntary departure was also denied, and he was ordered deported to Hong Kong.[1] This appeal followed. Oral argument was heard before the Board on December 2, 1980. The record will be remanded.

The respondent is a 41-year-old native of the People's Republic of China, born in Foochow, China. According to his I-589 "Request for Asylum in the United States," he "fled from the Mainland of China to Macau and entered Hong Kong secretly in 1961." The application further reflects that his wife was born in and still lives in Foochow, China, and four children, born in 1960, 1964, 1966, and 1969, all were born in and now live in Foochow. The respondent entered the United States on June 15, 1974, as a nonimmigrant crewman, with a Hong Kong seaman's book. He was authorized to remain in this country until his vessel departed, but in any event no longer than 29 days. An Order to Show Cause was issued against the respondent on June 20, 1977, charging him with deportability as an overstay under section 241(a)(2) of the Act, 8 U.S.C. 1251(a)(2).

At a deportation hearing held on September 21, 1979, the respondent, through counsel, admitted the allegations in the Order to Show Cause. He was found deportable based on these admissions. He declined to designate a country of deportation. The immigration judge named the People's Republic of China as the country of deportation, and the trial attorney for the Immigration and Naturalization Service designated Hong Kong. The respondent thereupon applied for withholding of deportation and for asylum. The Service did not oppose withholding of deportation from the People's Republic, and withholding from that country was accordingly granted by the immigration judge.[2] However, the

---

[1] The immigration judge's first order was an order of deportation to the People's Republic of China, the respondent's place of birth. However, as withholding from that country was granted, the effective order of deportation was to Hong Kong.

[2] We have been informed by the Service that the government will now attempt to deport aliens to the People's Republic of China, and that applications for withholding of deportation from that country should not, under Service policy, be conceded by the Service trial attorneys. A grant of section 243(h) relief is merely a stay of deportation. Should substantial changes occur in the country from which such relief is granted, or if, for other reasons, the grant should need to be reevaluated, the Service can move for reopening.

immigration judge found no clear probability of persecution in Hong Kong, so he denied withholding from that place. The immigration judge's orders further reflect that the requests for political asylum as to both the People's Republic and Hong Kong were denied. The decision does not discuss the asylum applications, however.

By granting the respondent's application for withholding of deportation from the People's Republic of China, the immigration judge acknowledged that the respondent's "life' or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion." Section 243(h)(1) of the Act, as amended by the Refugee Act of 1980. His application for asylum, for the same country, is therefore given stature as based on an apparent well-founded fear of persecution. The immigration judge's failure to set forth the reasons for denying asylum in this case leaves the Board without guidance as to his findings and makes even more essential our own careful analysis of the record. *See Dolenz* v. *Shaughnessy*, 206 F.2d 392 (2 Cir. 1953).

An alien may qualify for asylum under the Refugee Act of 1980 if it is determined that he is a "refugee" within the meaning of section 101(a)(42)(A) of the Immigration and Nationality Act, 8 U.S.C. 1101(a)(42)(A). That section defines a refugee as

> any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

Thus, as a first step in establishing eligibility for relief, an alien must show persecution on account of one or more of these same five reasons, whether he is applying for asylum or for withholding.[3] We note also that the form used to apply for asylum, the I-589, is often used for withholding applications as well. Moreover, the regulations provide that asylum requests made after the institution of exclusion or deportation proceedings "shall be considered as requests for withholding . . ." 8 C.F.R.

---

A mere change of "policy," however, unsupported by a statement of reasons or supporting evidence, would not ordinarily warrant reopening. Were it not for other considerations, reopening of this case would not be warranted.

[3] Although section 243(h) was amended by the Refugee Act to substitute "life or freedom would be threatened" for "persecution," we have, after examining the legislative history of the new Act, held that this broader choice of words in the Refugee Act was not intended to change the prior law requiring persecution by the government in the country to which the alien is returnable (or persecution at the hands of an organization or person from which the government cannot or will not protect the alien). *See Matter of McMullen*, 17 I&N Dec. 542 (BIA 1980). Similarly, we do not believe that the use of the word "persecution" in section 101(a)(42)(A), instead of "life or freedom would be threatened," as in section 243(h), is a significant distinction between withholding of deportation and asylum.

17

208.3(b) (effective June 1, 1980). Given these considerations, we hold that where a finding has been made that an alien's life or freedom would be threatened in a given country, and that his deportation to that country should thus be withheld, then it should also be found that this alien has a well-founded fear of persecution in that country for asylum purposes.

This holding, however, does not mean that any alien who has been granted 243(h) relief will also be granted asylum. Despite the similarities between these two forms of relief, and despite the fact that the two terms have often been used interchangeably, there remain some differences between asylum and withholding of deportation.[4] For example, an alien granted asylum may after 1 year apply for adjustment of status under section 209 of the Immigration and Nationality Act, 8 U.S.C. 1159, whereas an alien who has only been granted withholding of deportation has no such means available for becoming a permanent resident.

A distinction which is very important in the present case is the fact that the concept of firm resettlement is a crucial issue with regard to asylum applications, but is not relevant to 243(h) applications. This is so because withholding of deportation is country-specific, barring deportation only to a single place.[5] Thus, if there is any other place to which an alien may be deported under section 243(a), such deportation may be effected without regard to whether or not he may have resettled in that other place. Asylum will not even be granted, however, where the alien has been firmly resettled in a third place.

A showing that an alien will be persecuted in a given country will not necessarily result in his being granted asylum. There are several reasons why an alien with a valid persecution claim might be denied asylum. Asylum could be denied if the alien comes within one of the undesirable groups described in section 243(h)(2) and 8 C.F.R. 208.8(f)(1)(iii)-(vi).

---

[4] Prior to May 1979, neither immigration judges nor this Board were required to address asylum claims, as jurisdiction to adjudicate asylum applications then lay exclusively with the District Directors. Previously, then, we were not called upon to discuss the differences between asylum and 243(h) relief: we needed only to concern ourselves with applications for withholding of deportation. Effective May 19, 1979, however, the regulations gave authority to immigration judges and this Board to consider asylum applications made after the commencement or completion of deportation proceedings. *See* 8 C.F.R. 108.3. Interim regulations promulgated pursuant to the Refugee Act of 1980 similarly provide that asylum applications made after the institution of exclusion or deportation proceedings shall be considered by immigration judges. *See* 8 C.F.R. 208.3(h) (effective June 1, 1980). As we have only quite recently acquired jurisdiction over asylum claims, we are only just now beginning to resolve some of the problems caused by this addition to our jurisdiction, including the problem of determining exactly how withholding of deportation and asylum are to fit together.

[5] Section 243(h)(1) provides that an alien shall not be deported or returned "to *a country* if the Attorney General determines that such alien's life or freedom would be threatened *in such country* . . ." (Emphasis added.)

18

Or, as referred to above, an alien can be denied asylum if he has been firmly resettled in another country. *See* section 207(c)(1) of the Act; 8 C.F.R. 208.8(f)(1)(ii); 8 C.F.R. 208.14.

"Firm resettlement," although not specifically provided for in the statutes prior to the 1980 Refugee Act, is a concept which has long been part of our laws relating to refugees. The predecessor statute, for instance, section 203(a)(7), 8 U.S.C. 1153(a)(7) (repealed by section 203(c)(3) of the Refugee Act), failed to specifically mention the "firmly resettled" concept. The Supreme Court, however, when faced with the issue, found that this was a proper factor to consider in determining whether an alien was fleeing persecution and entitled to refugee status under section 203(a)(7). The Court noted that the doctrine of firm resettlement was inherent in the "central theme of 23 years of refugee legislation—the creation of a haven for the world's homeless people." *Rosenberg v. Yee Chien Woo*, 402 U.S. 49, 55 (1971). *See also Chinese American Civic Council v. Attorney General of United States*, 566 F.2d 321, 325 (D.C. Cir. 1977); *Shen v. Esperdy*, 428 F.2d 293 (2 Cir. 1970); *Kai Fung Chan v. Kiley*, 454 F.Supp. 34 (S.D.N.Y. 1978). Thus, the inclusion in the new legislation of the firm resettlement doctrine is consistent with past recognition of the doctrine and its importance.

The question remaining, then, is whether the respondent in the present case has been firmly resettled in Hong Kong. The regulations give some guidance in this area.[6] However, the question of firm resettlement is one of fact. The respondent has requested reopening so that he may litigate this issue before the immigration judge. His request has not been accompanied by any substantial offer of proof. However, despite his flight to Hong Kong in 1961 and his possession of a Hong Kong crewman book, his children were not born there, but were born in Mainland China, and his wife appears not to have joined him in Hong Kong. Thus, we are unable on the record before us to determine whether or not he has been firmly resettled in Hong Kong. The issue does not appear to have been reached at the hearing below. A remand is therefore necessary to enable the respondent and the Service to present evidence on the question of firm resettlement. In addition to the guidelines provided by the regulations relating to the 1980 Refugee Act, there is a considerable body of case law regarding firm resettlement under previous statutes, which should be of some help in reaching a decision on this issue.

---

[6] The applicable regulations provide:

A refugee is considered to be "firmly resettled" if he has been offered resident status, citizenship, or some other type of permanent resettlement by another nation and has traveled to and entered that nation as a consequence of his flight from persecution, unless the refugee establishes, to the satisfaction of the United States Government officer reviewing the case, that the conditions of his residence in that nation have been

We note for the record that the immigration judge's denial of withholding of deportation from Hong Kong was correct. The respondent has apparently lived there off and on for a number of years, and there is nothing to show that he was ever in any way persecuted in Hong Kong. The respondent's asylum/withholding application reflects that he fears returning to Hong Kong only because, "I am afraid Hong Kong will be taken over by the Communists." This fear is purely speculative, and is insufficient to warrant a grant of 243(h) relief as to Hong Kong. If, therefore, it is found that the respondent has been firmly resettled in Hong Kong, there is nothing to prevent his return to that place.

For the reasons stated above, we will remand the record to the immigration judge for further proceedings.

**ORDER:** The record is remanded to the immigration judge for further proceedings consistent with the foregoing opinion.

CONCURRING AND DISSENTING OPINION: Irving A. Appleman, Board Member

I dissent from that portion of the majority decision which holds that where a finding has been made that an alien's life or freedom would be threatened in a given country, so that deportation to that country should be withheld, it automatically follows that the alien has established a well-founded fear of persecution in that country for asylum purposes.

Experience has shown that with respect to deportation to Mainland China (PRC), it has been common practice for the Service to concede "persecution" under section 243(h) for purposes of disposing of a case, because the Government had neither the ability nor the intention at the time to deport to the People's Republic of China. See footnote 2, majority, this case; see also Matter of Fuu, 17 I&N Dec. 354 (BIA 1980). This is precisely what happened in this case. There was no exposition or exploration whatsoever of the facts bearing on the relief. Under these circumstances, I would not give the finding of persecution the conclusive effect on this aspect of the asylum application it was accorded by the majority. While it obviously is entitled to some weight, it is conceiv-

---

so substantially and consciously restricted by the authorities of that country that he has not in fact been resettled. In making this determination, the officer shall consider, in light of the conditions under which other residents of the country live, the type of housing, whether permanent or temporary, made available to the refugee, the types and extent of employment available to the refugee, and the extent to which the refugee has received permission to hold property and to enjoy other rights and privileges (such as travel documentation, education, public relief, or naturalization) available to others resident in the country. 8 C.F.R. 207.1(b). See also 8 C.F.R. 208.14 (effective June 1, 1980).

able that in another case, the evidence may clearly show the finding to have been unwarranted.

With respect to resettlement, if the record in a case were reasonably clear, I would not be disposed to remand solely for evidence on this issue, in the absence of at least an offer of proof of a useful purpose to be served by such a remand. However, if this respondent's children were born in Mainland China as a result of his visits there, it not only raises a question as to the reality of the threat to his life or freedom in the People's Republic of China, but also whether he was firmly settled in Hong Kong despite residence since 1961. Because of the obvious ambiguities of the record, I am willing to go along with the remand in this case.