**Salaheddine Assaad CHATILA, Ghamra Chatila-Homsi and Zuohair Chatila-Homsi, Petitioners,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 83–7563.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 10, 1985.

Decided Sept. 3, 1985.

</div>

---

Robert O. Wells, Mikkelborg, Broz, Wells & Fryer, Seattle, Wash., for petitioners.

Alison Drucker, Dept. of Justice, Washington, D.C., for respondent.

Before SNEED and BEEZER, Circuit Judges, and TAKASUGI *, District Judge.

SNEED, Circuit Judge:

Salaheddine Assaad Chatila and his family petition this court for review of the Immigration and Naturalization Service's denial of an application for political asylum and withholding of deportation. We deny the petition.

## I.

### FACTS AND PROCEEDINGS BELOW

The petitioners in this case, the Chatilas, are a married couple and their eighteen year old son. In 1958, Mr. and Mrs. Chatila left their native Lebanon and settled in Venezuela. Mr. Chatila began his own business there and became active in Venezuela's Democratic Action (Deko) Party. Mr. Chatila distributed propaganda and raised money for Deko, and regularly attended party meetings. In 1978, Mr. Chati-

---

* Honorable Robert M. Takasugi, United States District Judge for the Central District of California, sitting by designation.

788

la says that the building in which he had his business was destroyed in 1978. He does not say who destroyed it. He further maintains that a judge and the judge's secretary entered his house and took away all his family's personal property. Mr. Chatila tried to recover the property, but believed he had little chance of success because the judge's secretary belonged to Venezuela's Christian Party (Copei), Deko's main political opposition. Mr. Chatila says that when it became clear that Copei would win the 1978 general election, he and his family left Venezuela because he was afraid Copei party members would kill him.

The Chatilas arrived in the United States as visitors for pleasure in November 1978. In April 1979 their status was changed to business visitors, valid to September 19, 1979. The Chatilas overstayed their visas and in February 1980, after deportation proceedings had been brought against them, Mr. Chatila requested political asylum. At a hearing before an immigration judge, Mr. Chatila presented evidence that purported to show that if he returned to Venezuela, he would be persecuted because of his political activity.

This evidence was as follows: He testified that after Copei took power, it began to arrest "people who were not of their Party." He said that if he had stayed in Venezuela Copei supporters would have killed him. Mr. Chatila also introduced copies of letters written to him from Deko party members who remained in Venezuela. The letters warned him to stay in the United States until Copei is out of power and reported that some people in Venezuela had been arrested and harmed. One of the letters said that Mr. Chatila's name was "registered in all the airports of Venezuela, by order of the Seventh Judge of Investigation, in the first degree[.] That means if you come to Venezuela, they will take [you] straightaway to jail ... for investigation and who knows after that when you will be released." Mr. Chatila also introduced copies of articles from Venezuelan newspapers that discussed terrorist and other criminal activity.

The immigration judge also received into evidence a letter from the U.S. State Department that said, in part: "Venezuela has an excellent record in observance of human rights and an open political system in which the opposition operates freely. We have not heard of any documented case of political persecution ... since ... 1979 and are not aware of anyone being held for non-violent political activity." The State Department recommended that the application for asylum be denied.

In January 1981, the immigration judge denied the application for asylum. His decision said that Mr. Chatila "must demonstrate a *clear probability* that [he] will be persecuted if returned to [Venezuela]." (emphasis added). He did not employ the "well-founded fear" of persecution standard. The immigration judge found that Mr. Chatila had failed to establish a clear probability of persecution:

During some of this time, the Christian Party was in power and nothing happened to him; he has not presented anything of a concrete nature to show that, if he is now returned, something would happen. This finding is supported by a letter from the Deputy Assistant Secretary of State for Human Rights and Humanitarian Affairs of the Department of State.

The Board of Immigration Appeals (BIA or the Board) affirmed the immigration judge's decision. It gave the petitioners thirty days in which to depart voluntarily from the United States. If they did not depart within that time, the Board ordered that the petitioners be deported. The petitioners now seek review of that order.

II.

STATUTORY BACKGROUND

When an alien seeks to avoid deportation because he fears he will be persecuted for his political opinions or activity, two separate provisions of the immigration laws become relevant. Section 208(a) of the Refugee Act of 1980 (codified at 8 U.S.C. § 1158(a) (1982)), allows political refugees to be granted asylum in this country. Sec-

tion 243(h) of the Immigration and Nationality Act, as amended by section 203(e) of the Refugee Act (codified at 8 U.S.C. § 1253(h) (1982)), prohibits the Attorney General from deporting any alien whose life or freedom would be threatened by return to his country.

An alien who fears persecution files an INS form called "Request for Asylum in the United States." When the request for asylum pursuant to section 208(a) is made after the initiation of deportation proceedings, it is also treated as a request for relief under section 243(h). 8 C.F.R. § 208.3(b) (1985). The Immigration Judge and the Board of Immigration Appeals are then required to evaluate the alien's claim under the criteria of both section 243(h) and section 208(a).

### A. Section 243(h): The "Clear Probability" of Persecution Standard

■ Section 243(h) *prohibits* the Attorney General from deporting an alien to a country in which his "life or freedom would be threatened on account of," among other things, his "membership in a particular social group, or [his] political opinion." The Supreme Court has held that the 1980 amendments to the immigration laws did not lower the burden of proof that an alien must satisfy under section 243(h). He still must show a "clear probability" of persecution. *INS v. Stevic,* — U.S. —, 104 S.Ct. 2489, 2500–01, 81 L.Ed.2d 321 (1984). The "clear probability" standard requires that the alien show that "it is more likely than not" that he will be persecuted. *Id.,* 104 S.Ct. at 2498.

■ Because the relief offered by section 243(h) is no longer discretionary, we now review the BIA's denial of an application for a prohibition of deportation under a heightened "substantial evidence" standard. *See Bolanos-Hernandez v. INS,* 749 F.2d 1316, 1320 n. 8 (9th Cir.1984).

### B. Section 208(a): The "Well-Founded Fear" of Persecution Standard

Failing to show a "clear probability" of persecution, Mr. Chatila is nonetheless eligible for a discretionary grant of asylum if

he can show that he is a "refugee" within the meaning of section 101(a) of the Refugee Act of 1980. The Act's definition of refugee includes those aliens "who [are] unable or unwilling to return to . . . [their] country because of persecution or a well-founded fear of persecution on account of . . . membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A) (1982). Upon a showing of a "well-founded fear of persecution" the Attorney General may, in his discretion, grant asylum pursuant to section 208(a). *See* 8 U.S.C. § 1158(a) (1982).

■ Our review of section 208(a) decisions involves a two-step analysis. First, we determine whether substantial evidence supports the BIA's determination that an alien has failed to prove a well-founded fear of persecution. If it does, we must affirm the denial of asylum. If, however, it does not, and it is found that the alien has established a well-founded fear, a denial of asylum is reviewed for an abuse of discretion. *See Bolanos-Hernandez,* 749 F.2d at 1321 n. 9.

■ The Supreme Court has suggested, and we have recently held, that the "well-founded-fear standard [of section 208(a) ] is in fact 'more generous' . . . [and] . . . more liberal . . . than the clear probability test" of section 243(h). *Bolanos-Hernandez v. INS,* 749 F.2d at 1321; *see also Stevic,* 104 S.Ct. at 2498. In *Bolanos-Hernandez,* we noted that section 243(h) is phrased in purely objective terms. 749 F.2d at 1321 (quoting section 243(h)). Section 208(a), however, allows the Attorney General to grant asylum on the strength of the "partially subjective" showing of a "well-founded fear of persecution." *Id.*

### III.

### DISCUSSION

### A. Whether the immigration judge and the Board of Immigration Appeals applied the correct legal standard in evaluating Mr. Chatila's application for withholding of deportation and political asylum.

Neither the immigration judge nor the BIA separately evaluated Mr. Chatila's

claims under section 243(h) and section 208(a). When the BIA disposes of an alien's appeal in this summary fashion, we first consider his "243(h) claim under the more stringent clear-probability standard. Then if [we] conclude[ ] that the alien's 243(h) petition was properly denied, [we] ... review the 208(a) claim under the more generous well-founded fear standard." *Bolanos-Hernandez,* 749 F.2d at 1322.

■ It is true that the immigration judge reviewed Mr. Chatila's asylum application only under the "clear probability" standard of section 243(h). This was error. We do not believe, however, that it constitutes reversible error under the facts of this case. In this case, there is no reason to think that the immigration judge would have found that Mr. Chatila established a well-founded fear of persecution. As we discuss below, the record makes it very clear that the immigration judge did not accord much weight to *any* of the evidence introduced at the hearing.

Moreover, the BIA recognized that there is a difference between the "clear probability" and the "well-founded fear" standards. It concluded that Mr. Chatila had "failed to sustain his burden of establishing a well-founded fear that he will be singled out for persecution in Venezuela." It also stated that its conclusion "as to [Mr. Chatila's] claim is the same whether we apply a standard of 'clear probability,' 'good reason,' or 'realistic likelihood.' " Any error in the application of the legal standard by the immigration judge was rendered harmless by the BIA's more discriminating review.

B. *Whether substantial evidence supports the finding that Mr. Chatila failed to show a "clear probability" or "well-founded fear" of prosecution.*

We find that substantial evidence supports the conclusion both (1) that Mr. Chatila did not establish a clear probability of persecution, and (2) that he did not establish a well-founded fear of persecution.

At his asylum hearing, Mr. Chatila did not testify that specific threats had been made against his life or freedom. Nor did he testify that he had *ever* been persecuted for his activity on behalf of Deko, even during the period in which Copei held power in Venezuela in the late 60's and early 70's.

■ He did, however, introduce some letters from Deko party members who remained in Venezuela. One of the letters warned that the authorities would arrest Mr. Chatila if he returned to Venezuela. It does not, however, say why. Another letter said that a certain Eduardo Hernandez had disappeared. It does not, however, say who Mr. Hernandez was, who might have abducted him, or why he might have been harmed. In fact, none of the letters explicitly states that Deko party members have been persecuted by the government for their political activity. Much less do they corroborate Mr. Chatila's testimony that he himself will be persecuted if returned to Venezuela. The "link" to Mr. Chatila and his family is lacking.

Mr. Chatila also introduced some articles from Venezuelan newspapers. But they discuss general problems of terrorism and crime. They do not provide any evidence even remotely relevant to the question whether Mr. Chatila would be persecuted upon his return to Venezuela. Indeed, one of the articles discusses terrorist activity directed against the Copei government. Once more the "link" is missing.

Finally, the immigration judge was clearly influenced by the State Department's recommendation against the grant of asylum. Its letter said that Venezuela has an "excellent record" in the observance of human rights and that the political opposition there operates freely and openly. The State Department said that it is unaware of any documented case of political persecution since Copei assumed power. It also suggested that if Mr. Chatila has been targeted for arrest, it is probably for some violation of Venezuelan law and not for his political activity.

In short, we do not believe that the evidence offered by Mr. Chatila establishes

either a clear probability or well-founded fear of persecution. The applications for withholding of deportation and political asylum were properly denied.

DENIED.