Efrain Antonio
**REBOLLO–JOVEL, Petitioner,**

v.

**IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.**

No. 84–7858.

United States Court of Appeals,
Ninth Circuit.

Submitted Sept. 3, 1985.

Decided July 11, 1986.

Alan M. Anzarouth, San Diego, Cal., for petitioner.

James A. Hunolt, Michael Lindeman, Joan E. Smiley, Washington, D.C., for respondent.

Before WALLACE, CANBY, and BEEZER, Circuit Judges.

WALLACE, Circuit Judge:

Rebollo-Jovel is a native and citizen of El Salvador who entered the United States without inspection. At his deportation hearing, Rebollo-Jovel conceded deportability and applied for withholding of deportation under 8 U.S.C. § 1253(h) and for political asylum under 8 U.S.C. § 1158(a). The immigration judge (IJ) denied both applications. The Board of Immigration Appeals (Board) dismissed Rebollo-Jovel's appeal, holding that he had failed to show either a "clear probability" or a "well-founded fear" of persecution. Rebollo-Jovel petitions for review, contending, first, that the Board applied the unduly heavy "clear probability" burden of proof to his asylum-eligibility claim and, second, that in any event he did demonstrate a "clear probability of persecution" sufficient to entitle him to withholding of deportation and to render him eligible for a discretionary grant of asylum. We have jurisdiction pursuant to 8 U.S.C. § 1105a(a), and we deny the petition for review.

I

A.

To be entitled to withholding of deportation to a country, an alien must show a "clear probability" that his life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1253(h). "Clear probability" requires a showing that persecution is "more likely than not." *INS v. Stevic,* 467 U.S. 407, 424, 104 S.Ct. 2489, 2498, 81 L.Ed.2d 321 (1984); *Espinoza-Martinez v. INS,* 754 F.2d 1536, 1539 (9th Cir.1985) (*Espinoza-Martinez*). Evidence of general conditions of strife is insufficient by itself to establish a clear probability of persecution. *See Espinoza-Martinez,* 754 F.2d at 1540; *Chavez v. INS,* 723 F.2d 1431, 1433–34 (9th Cir.1984) (*Chavez*). We review withholding of deportation decisions for substantial evidence. *Espinoza-Martinez,* 754 F.2d at 1539.

To be eligible for a discretionary grant of asylum, a petitioner must show a "well-founded fear" of persecution in his home country on account of race, religion, nationality, membership in a particular social group, or political opinion. *See* 8 U.S.C. §§ 1158(a), 1101(a)(42)(A). A "well-founded fear" contains both a subjective component, requiring the fear to be genuine, and an objective component, which "requires a showing, by credible, direct, and specific evidence in the record, of facts that would support a *reasonable* fear that the petitioner faces persecution." *Diaz-Escobar v. INS,* 782 F.2d 1488, 1492 (9th Cir. 1986) (*Diaz-Escobar*) (emphasis added). Because this standard requires slightly less than a showing that persecution is "more likely than not," *id.,* the "well-founded fear" standard is somewhat more generous than the "clear probability" standard. *Id.; Bolanos-Hernandez v. INS,* 767 F.2d 1277, 1282–83 (9th Cir.1984); *Argueta v. INS,* 759 F.2d 1395, 1396–97 (9th Cir.1985). We must determine whether substantial evidence supports the Board's determination that Rebollo-Jovel has failed to prove a

well-founded fear of persecution. *Diaz-Escobar*, 782 F.2d at 1491–92.

### B.

The Board denied Rebollo-Jovel's request for withholding of deportation because he failed to demonstrate a "clear probability of persecution." In denying Rebollo-Jovel's application for asylum, the Board stated that he had failed to substantiate his asylum claim "regardless of whether such claim is assessed in terms of demonstrating a 'clear probability,' a 'realistic likelihood,' a 'reasonable possibility' or a 'good reason to fear' persecution." The Board has since made it clear that it does not regard the well-founded fear standard and the clear probability standard to be meaningfully different. *See Matter of Acosta*, Interim Dec. No. 2986 (BIA Mar. 1, 1985) (*Acosta*). Rebollo-Jovel argues that the Board erroneously applied the clear probability standard to his asylum claim. The Immigration and Naturalization Service (INS) urges us to adopt the Board's position in *Acosta*, in effect asking us to overrule Ninth Circuit precedents. The primary question before us is what we should do when faced with a Board opinion that denies asylum on the ground that the alien failed to demonstrate a "well-founded fear" of persecution, whether that term is defined as a "clear probability," a "realistic likelihood," a "reasonable possibility," or a "good reason."

We have had several occasions to consider cases in which the Board used similar words to summarize its review of a request for asylum. Most often we have upheld the Board's denial of asylum in these cases. *Compare Vides-Vides v. INS*, 783 F.2d 1463, 1468–69 (9th Cir.1986) (*Vides-Vides*); *Quintanilla-Ticas v. INS*, 783 F.2d 955, 957 (9th Cir.1986) (*Quintanilla-Ticas*); *Chatila v. INS*, 770 F.2d 786, 790 (9th Cir.1985) (*Chatila*); *Saballo-Cortez v. INS*, 761 F.2d 1259, 1262 (9th Cir.1984) (*Saballo-Cortez*), *with Cardoza-Fonseca v. INS*, 767 F.2d 1448, 1450, 1453–54 & n. 6 (9th Cir. 1985) (*Cardoza-Fonseca*), *cert. granted*, — U.S. —, 106 S.Ct. 1181, 89 L.Ed.2d 298 (1986). The Board's choice of words in

this case is problematic primarily because it has indicated, in *Acosta*, that it believes the "clear probability" and "well-founded fear" standards "are not meaningfully different and, in practical application, converge." *Acosta*, at 25. Although the circuits are divided on this question, *compare Sankar v. INS*, 757 F.2d 532, 533 (3d Cir.1985), *with Cardoza-Fonseca*, and the Supreme Court has granted certiorari in one of our cases apparently to resolve the dispute, *see INS v. Cardoza-Fonseca*, — U.S. —, 106 S.Ct. 1181, 89 L.Ed.2d 298 (1986), our case law quite clearly establishes that the legal difference between "clear probability" and "well-founded fear" must be respected. *See Vides-Vides*, 783 F.2d at 1468.

■ Unless the Supreme Court directs otherwise, we cannot uphold denials of asylum based upon a failure to demonstrate that persecution is "more likely than not," and we thus require the Board to indicate that it has applied a somewhat less demanding standard. *See id.* At the same time, we recognize that the Board need not entirely segregate its analysis of "clear probability" and "well-founded fear," because if an alien "fail[s] to show a well-founded fear of persecution, he *a fortiori* fail[s] to show a clear probability of it whether or not the latter standard is more stringent or the same as the former." *Diaz-Escobar*, 782 F.2d at 1491; *see also Quintanilla-Ticas*, 783 F.2d at 957.

■ Nothing in our case law suggests that the use of certain words should lead either to automatic affirmance, or to automatic reversal. *See Vides-Vides*, 783 F.2d at 1468–69. Where the Board applies an erroneous standard in reviewing an asylum claim, it should not be able to protect its decision by invoking a talismanic litany of words. We address questions relating to the standard applied on a case-by-case basis, deciding each not on the basis of "certain magic words," but on the basis of what the Board actually did. *Id.* Still, the several circuit court cases in which the Board ruled against aliens' asylum claims

using the same or similar language afford us considerable guidance.

In *Carvajal-Munoz v. INS,* 743 F.2d 562, 575 (7th Cir.1984) (*Carvajal-Munoz*), the Board held that an alien's evidence failed to meet any of several standards. The Seventh Circuit concluded that "although it did not go into detail regarding the specific evidentiary burden connected with each of the two standards," the Board's reference to "good reason" and "realistic likelihood" as well as to "clear probability" made it apparent that the Board had assessed the evidence under an appropriately lenient standard. *Id.; see id.* at 572–75.

In *Saballo-Cortez,* we reasoned similarly:

> We note that the [Board] found that Saballo-Cortez failed to meet his burden of proof "whether his claim is assessed in terms of whether he has demonstrated 'clear probability,' 'good reason,' or 'realistic likelihood' of persecution." Thus, we cannot say on this record that the [Board] improperly applied the clear probability of persecution standard, as claimed by Saballo-Cortez.

761 F.2d at 1262. The Board's language made plain enough that it had done more than to apply the "clear probability" standard alone.

Eight months later, in *Cardoza-Fonseca,* we struck down a denial of asylum despite the Board's use, in an unpublished and nonprecedential decision, of similar language. The record in *Cardoza-Fonseca,* however, was significantly different from its predecessor cases. We wrote:

> The [Board] affirmed, stating that no matter what burden of proof Cardoza-Fonseca faced, whether " 'clear probability,' 'good reason' or 'realistic likelihood,' " all of which the Board thought to be identical, she failed to show that she *"would* suffer persecution." The Board also reasoned that her claim failed because she had not introduced any objective evidence to demonstrate that she *"will* be subject to persecution."

767 F.2d at 1450 (emphasis supplied by court).

Thus, we concluded that the Board erroneously demanded proof that the alien *would* suffer persecution, and that its articulation of other standards of proof did not change this. In effect, the Board had held that " 'good reason' or 'realistic likelihood' meant no more and no less than 'clear probability.' " *Id.* at 1454 (footnote omitted). We recognized that this represented a departure from the usual usage. We wrote:

> We need not decide whether the phrase "good reason" could be synonymous with "well-founded fear." In either event, *it is clear from the standards applied to Cardoza-Fonseca's claim,* as well as from its position in *Lam,* [18 I&N Dec. 15 (BIA 1982),] in *Acosta,* in its briefs, and at oral argument, that the Board did not apply the "well-founded fear" standard.

767 F.2d at 1454 n.6 (emphasis added). We struck down the Board's decision because it was "clear" from its opinion that it had applied the "clear probability" standard. *Id.* Apparently, the INS conceded this "in its briefs, and at oral argument." *Id.*

Notably, in *Cardoza-Fonseca,* we cited *Carvajal-Munoz* approvingly, and relied heavily on its analysis of the "well-founded fear" standard. *Id.* at 1453. Furthermore, in *Cardoza-Fonseca,* we did not even remotely suggest a repudiation of either *Saballo-Cortez* or *Carvajal-Munoz.*

In subsequent cases we have upheld the Board's denial of asylum as we did in *Saballo-Cortez.* In *Chatila,* for example, we wrote:

> [The Board] recognized that there is a difference between the "clear probability" and the "well-founded fear" standards. ... [The Board] stated that its conclusion "as to [Mr. Chatila's] claim is the same whether we apply a standard of 'clear probability,' 'good reason,' or 'realistic likelihood.' "

770 F.2d at 790. The Board's words indicated that it did not limit its asylum inquiry to the demanding clear probability stan-

dard, but considered an appropriately less-demanding standard as well.

In *Quintanilla-Ticas*, we acknowledged that the Board's reference to several standards was confusing insofar as it did not explicitly differentiate and define each of the various standards stated, but upheld the Board because it had recognized the existence of a distinction between the standards for asylum and for withholding of deportation. 783 F.2d at 957. Similar words were adequate in *Vides-Vides*, where we held that "[a]lthough the [Board's] decision fails to state explicitly that the asylum standard is 'more generous' or 'more liberal,' this cannot be regarded as a fatal flaw." 783 F.2d at 1468. We were satisfied because the Board's words, taken in the context of the opinion as a whole, reflected its "recognition, although not necessarily adoption, of distinctive standards." *Id.*

■ Our cases thus accept the Board's language in its common meaning. We ought not to impute uncommon meanings to the Board's words, unless the Board has given us a clear indication that it is using words in either a technical or somehow incorrect sense. Certainly, we ought not jump to the conclusion that the Board is endeavoring to mislead us. *See United Steelworkers v. Marshall*, 647 F.2d 1189, 1217 (D.C. Cir.1980), *cert. denied*, 453 U.S. 913, 101 S.Ct. 3149, 69 L.Ed.2d 997 (1981); *FTC v. Owens-Corning Fiberglas Corp.*, 626 F.2d 966, 975 (D.C. Cir.1980); *Willapoint Oysters, Inc. v. Ewing*, 174 F.2d 676, 696 (9th Cir.), *cert. denied*, 338 U.S. 860, 70 S.Ct. 101, 94 L.Ed. 527 (1949); *cf. United States v. Morgan*, 313 U.S. 409, 415–16, 61 S.Ct. 999, 1001–02, 85 L.Ed. 1429 (1941). The clear import of the Board's words in all of these cases was that the Board had endeavored, except in *Cardoza-Fonseca*, to apply more than one standard—whether or not it believed it should be required to.

### C.

■ In this case, the Board first acknowledged that to be eligible for withholding of deportation an alien must demonstrate a "clear probability" of persecution—which it defined as a showing that persecution is "more likely than not." Board dec. at 2. The Board recognized that to qualify for asylum, on the other hand, the alien need demonstrate only a "well-founded fear" of persecution. The Board concluded:

> In the case before us, we find that the respondent has failed to demonstrate his eligibility for withholding of deportation. We also find that he has failed to adequately substantiate his asylum claim regardless of whether such claim is assessed in terms of demonstrating a "clear probability," a "realistic likelihood," a "reasonable possibility" or a "good reason to fear" persecution.

*Id.* at 2–3. We are satisfied that the Board did not limit its analysis of the asylum claim to a determination of whether a "clear probability" had been demonstrated. Taken at face value, the passage shows that the Board concluded that Rebollo-Jovel's request for asylum failed no matter which standard is applied, including the lesser standard required by our court.

### D.

Merely because we disagree with the Board's opinion in *Acosta* that "clear probability" and "well-founded fear" should be treated as essentially the same standard does not require that the petition be granted. It does not follow that, because the Board would prefer to equate "well-founded fear" with "clear probability," it always applies the "clear probability" standard no matter what else it says. Neither must we conclude that the Board applied *Acosta*'s "clear probability" standard to the asylum claim in this case merely because the INS is urging us to adopt that standard ourselves. Our review is concerned with what the Board did, not with whether the INS, or even the Board, would like us to adopt a new standard.

The Board in *Acosta* recognized that "[t]he Ninth Circuit ... has concluded that the well-founded-fear standard is more generous to an alien than the clear-probability

standard." *Acosta*, at 25. It acknowledged that "[t]he Sixth, Seventh, and Ninth Circuits ... appear to have chosen the language 'good reason' or 'valid reason' to fear persecution to describe this standard." *Id.* at 23; *see Cardoza-Fonseca*, 767 F.2d at 1453–54. Thus, although *Acosta* equated well-founded fear with clear probability, *Acosta* itself associates "good reason to fear" with the lesser showing required by the Ninth Circuit. "Whether a 'well-founded fear' of persecution is called a 'reasonable chance,' a 'reasonable possibility,' a 'reasonable probability,' ... a 'reasonable expectation' "—or a "good reason to fear" —"is not decisive." *Diaz-Escobar*, 782 F.2d at 1492.

*Acosta* is consistent with the Board's word usage in other cases. In *Lopez v. INS*, 775 F.2d 1015, 1016 (9th Cir.1985) (*Lopez*), for example, we reviewed a decision in which the Board wrote "our conclusion is the same whether we apply the standard of 'clear probability,' or a *lesser standard, such as a 'good reason.'*" *Id.* at 1016 (quoting Board opinion) (emphasis added in *Lopez*). We cannot conclude that the Board regards "good reason to fear" as expressing anything other than a lesser standard than "clear probability." The Board explicitly applied the "good reason to fear" standard in evaluating Rebollo-Jovel's case.

## II

■ Our cases thus have a unifying theme: we should take the Board at its word when it states that it believes a claim should fail under any standard it might apply, unless it is clear to us, from their context in each case, that the Board's words mean something else. Although we have determined that the Board used appropriate legal standards to analyze Rebollo-Jovel's claims, we still must determine whether substantial evidence supports its conclusions under those standards. *See Diaz-Escobar*, 782 F.2d at 1491–92; *Quintanilla-Ticas*, 783 F.2d at 957.

Rebollo-Jovel testified before the IJ that his "uncle," who was actually his father's cousin and shared the family name "Rebollo," served as Minister of Education of El Salvador and was assassinated in 1979, reportedly by members of extremist groups. Rebollo-Jovel contended that he would be harmed because of his relationship to his uncle and because of his family name. He testified that two of his cousins were recently killed. One of these was killed while standing at a bus-stop, and the other died of shots fired at a bus on which he was riding. Rebollo-Jovel offered no evidence that his cousins' killings were politically motivated, and neither cousin shared his family name. Rebollo-Jovel's own involvement with politics was insignificant. He, his parents and sibling lived in El Salvador without harm, and his parents and sibling continue to live there.

Rebollo-Jovel also stated that he was "interrogated," apparently regarding rental payments, by three individuals posing as policemen who told him "not to get involved" in matters that were none of his business. He received three threatening messages in 1979, one by telephone and two on the windshield of his car, also warning him in substance "to mind [his] own business." Rebollo-Jovel suggested that the notes had something to do with his employment or association with a soccer team; however, the motives for Rebollo-Jovel's interrogation and for these threats were not established. Nothing in the record suggests that they were political. *Cf. Diaz-Escobar*, 782 F.2d at 1493 ("There is no indication in the record that the notice on his windshield was from any political organization.").

■ On these facts, the Board was unpersuaded that Rebollo-Jovel's fears of political persecution were objectively reasonable. Although his uncle's death apparently was a political killing, the Board concluded that Rebollo-Jovel's fears of a similar fate were not grounded in reasonable likelihood, because he was not an immediate family member of his uncle, and because, unlike his uncle, he was not politically active. Nothing suggested that the deaths of his cousins, or the threats he received,

were politically motivated, or that they evidenced anything more than the general conditions of unrest and violence in El Salvador. To qualify for political asylum, Rebollo-Jovel must demonstrate that potential persecution would be directed at him as an individual, *Espinoza-Martinez*, 754 F.2d at 1540, and that it would be politically motivated. *Zayas-Marini v. INS*, 785 F.2d 801, 805–06 (9th Cir.1986). We have repeatedly "rejected the contention that a citizen of El Salvador can establish eligibility for asylum merely by pointing out that political violence is widespread there." *Sarvia-Quintanilla v. INS*, 767 F.2d 1387, 1394 (9th Cir.1985); *see, e.g., Chavez*, 723 F.2d at 1434; *Martinez-Romero v. INS*, 692 F.2d 595, 595–96 (9th Cir.1982).

■■■■ The alien bears the burden of proof in both asylum and withholding of deportation cases. *Diaz-Escobar*, 782 F.2d at 1492. With respect to asylum we conclude that Rebollo-Jovel "failed to establish ... fear of persecution under any standard." *Lopez*, 775 F.2d at 1016. Because Rebollo-Jovel failed to demonstrate a reasonable probability or "well-founded fear" of persecution to support eligibility for asylum, he *a fortiori* failed to demonstrate entitlement to withholding of deportation under the clear probability standard. *See Diaz-Escobar*, 782 F.2d at 1491; *Larimi v. INS*, 782 F.2d 1494, 1497 (9th Cir.1986).

PETITION DENIED.

BEEZER, Circuit Judge, concurring:

I fully concur in the opinion of the court. I write separately only to point out that the decision of the Board of Immigration Appeals in this case was rendered prior to its decision in *In re Matter of Acosta*, Interim Dec. No. 2986 (BIA March 1, 1985). Consequently, today's decision cannot answer the question, which was expressly left open in our previous decision in *Vides-Vides v. INS*, 783 F.2d 1463 (9th Cir.1986), as to what effect the BIA's holding in *Acosta* should have upon our review of future BIA decisions which use similar language in disposing of asylum claims.

In *Vides-Vides*, we noted:

In *Acosta*, the BIA firmly adopted the position that there is no meaningful difference between the standards for asylum and withholding of deportation, thereby expressly rejecting the position adopted in this circuit.

Decisions of the BIA rendered prior to the adoption of this approach in *Acosta* need not necessarily be read as definitely rejecting differentiating standards for prohibition of deportation and asylum ....

In light of *Acosta*, it may be appropriate henceforth to require a more explicit statement from the BIA that, even were it to apply a more generous standard such as required in this circuit, it would still deny the asylum petition ....

783 F.2d at 1468 n. 3.

CANBY, Circuit Judge, concurring in part and dissenting in part:

I agree with that portion of Judge Wallace's opinion that upholds the Board's determination that Rebollo-Jovel is not entitled to withholding of deportation pursuant to 8 U.S.C. § 1253(h). I dissent, however, from the denial of review of Rebollo-Jovel's claim for asylum under 8 U.S.C. § 1158(a). I would grant the petition for review of that issue, and would reverse the Board's decision and remand the case to the Board for reconsideration.

This court has made it abundantly clear that the "well-founded fear of persecution" standard for asylum claims is "more generous" than the "clear probability" standard for withholding of deportation because of threat to life or freedom. *E.g., Cardoza-Fonseca v. INS*, 767 F.2d 1448, 1451 (9th Cir.1985), *cert. granted*, —— U.S. ——, 106 S.Ct. 1181, 89 L.Ed.2d 298 (1986); *Bolanos-Hernandez v. INS*, 767 F.2d 1277, 1281–83 (9th Cir.1984). The difference between the standards is an important one.

The term "clear probability" requires a showing that there is a greater-than-fifty-percent chance of persecution. In contrast, the term "well-founded fear" requires that (1) the alien have a subjective fear, and (2) that this fear have enough

of a basis that it can be considered well-founded.

*Cardoza-Fonseca,* 767 F.2d at 1452–53. Because of the difference in standards, some aliens who cannot qualify for mandatory withholding of deportation because of their inability to show a clear probability that their lives or freedom would be threatened by return to their countries, may nevertheless be able to qualify for discretionary grants of asylum by showing a well-founded fear of persecution.

As the majority opinion recognizes, the Board has never accepted the view that the standards of "clear probability" and "well-founded fear" are different. On the contrary, it has consistently equated the two standards, *see Cardoza-Fonseca,* 767 F.2d at 1451, and has most recently and thoroughly reiterated its position in *Matter of Acosta,* Interim Dec. 2986 (BIA March 1, 1985). There the Board concluded, after lengthy discussion, that "the standards for asylum and withholding of deportation are not meaningfully different and, in practical application, converge." *Acosta,* slip op. at 25.

Because of this consistent position of the Board, it has been difficult for this court to evaluate the catchall phrase the Board often inserts in its asylum decisions and has inserted in this one:

> We also find that [Rebollo-Jovel] has failed adequately to substantiate his asylum claim regardless of whether such claim is assessed in terms of demonstrating a "clear probability," a "realistic likelihood," a "reasonable possibility" or a "good reason to fear" persecution.

Normally such a recitation would be sufficient to assure us that the Board has assessed the claim in question by several different standards of greater and less severity, and has found the claim wanting under all. No such assurance is possible, however, in light of the consistent position of the Board that, in practical application, standards as different as "clear probability" and "well-founded fear" are equivalent. If "well-founded fear" does not mean to the Board what it means to this court, we

cannot rest on the Board's use of the term, or what the Board considers its equivalents. The crucial point for purposes of review is that the Board apply the correct standard, not that it utter the correct words.

This problem is not a new one for us. In reviewing Board decisions containing such disclaimers, we have adopted a case-by-case approach, pointing out that "[t]he utterance of certain magic words by the BIA is not the focus of our inquiry. Rather our concern is with the analysis actually applied by the BIA." *Vides-Vides v. INS,* 783 F.2d 1463, 1468 (9th Cir.1986).

The majority opinion here purports to accept the proposition that "[n]othing in our case law suggests that the use of certain words should lead either to automatic affirmance, or to automatic reversal." *Supra,* p. 444. It then largely undermines that position by giving effect to the Board's catchall disclaimer, and suggesting that "[w]e ought not to impute uncommon meanings to the Board's words, unless the Board has given us a clear indication that it is using words in either a technical or somehow incorrect sense."

In my view, the Board *has* given us, many times over many years, a clear indication that it uses "well-founded fear" to mean something other than the standard of asylum established for this circuit by *Bolanos-Hernandez* and *Cardoza-Fonseca.* The majority gives presumptive effect to the Board's disclaimer. Because the Board has consistently merged the standards of "well-founded fear" of persecution and "clear probability" of threat to life or freedom, I would give no presumptive effect, one way or the other, to the Board's catchall language.

The presumption aside, I look to the record to determine the "analysis actually applied by the BIA." *Vides-Vides,* 783 F.2d at 1468. I can find nothing there to indicate that the Board has evaluated Rebollo-Jovel's claim by a standard more generous than that required for withholding of deportation. The claim is at least a colorable one on its facts. Accordingly, I would

reverse the Board's decision and would remand the case to the Board for reconsideration of Rebollo-Jovel's asylum claim explicitly by the standards adopted for this circuit in *Bolanos-Hernandez* and *Cardoza-Fonseca.*