891 F.2d 294
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Gustavo Adolfo BORJA-MORAN, Petitioner,
v.
IMMIGRATION & NATURALIZATION SERVICE, Respondent.
 No. 88-7117.
 United States Court of Appeals, Ninth Circuit.
 Dec. 6, 1989.
 
 Before CHOY, ALARCON and CANBY, Circuit Judges:
 
 
 1
 MEMORANDUM**
 
 
 2
 Gustavo Borja-Moran seeks review of an order by the Board of Immigration Appeals (BIA). The BIA affirmed the Immigration Judge's (IJ) decision to deny asylum and withholding of deportation. Borja-Moran argues that the BIA did not use the correct legal standard to determine his asylum claim and that it lacked substantial evidence to support its finding that Borja-Moran did not have a well-founded fear of persecution. We disagree and affirm.
 
 
 3
 Borja-Moran, a citizen of El Salvador, entered the U.S. without inspection on January 29, 1983. In 1984, the INS began deportation proceedings. Borja-Moran admitted deportability and requested political asylum and withholding of deportation. Both requests were denied by the immigration judge. The BIA affirmed, and Borja-Moran petitioned for review. This court has jurisdiction over timely appeals under 8 U.S.C. § 1105a(a)(1).
 
 I. The Legal Standard
 
 4
 We review de novo whether the BIA applied the correct legal standard to Borja-Moran's applications. Florez-de Solis v. INS, 796 F.2d 330, 333-34 (9th Cir.1986).
 
 
 5
 Withholding of deportation must be granted if there is a "clear probability" that, if deported, the alien would be persecuted on the basis of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1253(h); INS v. Stevic, 467 U.S. 407, 430 (1984). Eligibility for political asylum requires a lesser finding that the alien has a "well-founded fear" of persecution. See INS v. Cardoza-Fonseca, 480 U.S. 421 (1987); 8 U.S.C. § 1158(a).
 
 
 6
 In denying Borja-Moran's applications, the BIA cited Cardoza-Fonseca and correctly acknowledged that "well-founded fear of persecution" for asylum eligibility requires a lesser showing than the "clear probability of persecution" required for withholding of deportation. Further, the BIA adopted the Fifth Circuit's view that an alien establishes a well-founded fear upon a showing that "a reasonable person in his circumstances would fear persecution."
 
 
 7
 Borja-Moran contends that these are "boiler-plate" statements and that the BIA applied only the standard for withholding of deportation. He points to statements that the evidence did not persuade the BIA that Borja-Moran "would be persecuted" and was "not significantly probative on the issue of whether a particular alien would be subject to persecution." (Emphasis added) "Would be persecuted" language reflects the higher clear probability standard used for withholding of deportation. See 8 U.S.C. § 1253(h); INS v. Stevic, 467 U.S. 407, 422.
 
 
 8
 The BIA may not merely recite the "magic words" of the asylum standard if it does not apply it. Arteaga v. INS, 836 F.2d 1227, 1231 (9th Cir.1988). However, a few " 'inartfully chosen words' " do not overcome a clear indication that the BIA applied the more generous well-founded fear standard to a petitioner's asylum claim. Rodriguez-Rivera, 848 F.2d 998, 1004 (9th Cir.1988) (quoting Sanchez-Trujillo v. INS, 801 F.2d 1571, 1579 (9th Cir.1986); See also Florez-de Solis v. INS, 796 F.2d 330, 334 (9th Cir.1986) (The BIA used "would" in stating the well-founded fear standard, but the court looked to the entire opinion to determine whether the BIA applied the correct standard).
 
 
 9
 We have reviewed the entire decision, and find that the BIA recognized and applied the correct legal standard to the asylum claim. A "well-founded fear" for asylum eligibility must be both subjectively genuine and objectively reasonable. Rebollo-Jovel v. INS, 794 F.2d 441, 443 (9th Cir.1986).
 
 
 10
 The BIA found "nothing in the respondent's own experience which would lead him to a reasonable fear that he would be in greater danger than any other member of the general population of El Salvador." (Emphasis added). The BIA further stated that the "incidents in which he was questioned were isolated incidents without further consequences" and his arguments were "too speculative." Immediately following those findings, the BIA found that Borja-Moran failed to make a prima facie case of well-founded fear, "even under the lesser standard of proof for asylum set by INS v. Cardoza-Fonseca."
 
 
 11
 The BIA did not always separate its discussion of Borja-Moran's asylum and withholding of deportation requests. Nevertheless, the decision, taken as a whole, demonstrates that the BIA was aware of the two different standards for asylum and withholding of deportation and found insufficient evidence to grant either. See Quintanilla-Ticas v. INS, 783 F.2d 955, 957 (9th Cir.1986) (where the BIA correctly acknowledges the two standards, it need not analyze the evidence separately under each standard). There was no error.
 
 II. Substantial Evidence
 
 12
 In reviewing a denial of asylum, this court determines whether substantial evidence supports the BIA's finding that the alien does not have a well-founded fear of persecution. Arteaga v. INS, 836 F.2d at 1228. After review of the whole record, we find the BIA's conclusion "substantially reasonable." See Diaz-Escobar v. INS, 782 F.2d 1488, 1493 (9th Cir.1986); Turcios v. INS, 821 F.2d 1396, 1398 (9th Cir.1987).
 
 
 13
 Borja-Moran fears persecution because of his former student status and anti-government activities at the University of El Salvador. Borja-Moran testified that he would be known as a university student because of the small number of university students in El Salvador. The BIA did not dispute that his fear was genuine. The only question is whether Borja-Moran's fear was "well-founded"; that is, whether he showed "credible, direct, and specific evidence ... of facts that would support a reasonable fear that petitioner faces persecution." Rebollo-Jovel v. INS, 794 F.2d at 443.
 
 
 14
 Borja-Moran was a pre-medical student at the university from 1968 through 1971. During that time, he belonged to AGEUS (the General Association of El Salvadoran University Students), and participated in meetings and marches to protest government policies regarding the university, workers, and health care. The university was closed in 1971. Borja-Moran then worked at a variety of skilled and semi-skilled jobs, primarily as a welder.
 
 
 15
 After the university was reopened he returned in 1979 and for a few months joined a student group which provided medical aid to war victims. The national guard closed the university in 1980. Borja-Moran could not continue his studies, and he worked for the next three years.
 
 
 16
 Borja-Moran was stopped and questioned by the army about his activities many times. He testified that interrogation stops were common for the general population, although more frequent for students. After the university closed, Borja-Moran returned several times in an unsuccessful attempt to retrieve his transcripts. On the last occasion, a national guardsman took down his name and address. This frightened Borja-Moran, who believed his name was placed on a list of suspects.
 
 
 17
 Borja-Moran testified that he saw a dead body in front of his home and this made such an impression on him that he decided to leave the country. He suspected that death squads were responsible for the killing because of the manner of the death. His testimony is not clear whether one or more people died, if they were students, or why they were killed.
 
 
 18
 Three months after the death, Borja-Moran left El Salvador with his passport and El Salvadorian cedula. A few days before he left, he was questioned by the army because he has the same last name as a well-known guerrilla. He had to produce his personal identity card, which showed that he had not voted in the 1982 election. Although he had not voted because he felt the election was a farce, he told the army that he had been ill on election day, and they accepted his explanation.
 
 
 19
 Borja-Moran asserted that if he returns to El Salvador, he will be killed, both because he was associated with a student group seen as subversive and because he fled to the United States to seek asylum. Two witnesses testified to human rights violations in El Salvador against students and university employees.
 
 
 20
 Borja-Moran's association with the student groups is remote in time. Most of his student activities occurred in 1968-71, with a short period of university attendance in 1980. He did not leave El Salvador until 1983. The testimony about continuing harassment of students centered on current students and university employees, not former students from many years ago. In sum, the BIA was "not convinced that the respondent, now 40 years of age, would, at this time be perceived as belonging to the social group of university students, nor would political opinion be imputed to him because of his former university status." This conclusion is supported by substantial evidence.
 
 
 21
 During all of the time that Borja-Moran remained in El Salvador, he was not detained, arrested, or imprisoned. An alien need not be arrested to have a well-founded fear of persecution, if his freedom is otherwise threatened. Turcios v. INS, 821 F.2d 1396, 1402 (previous torture, being watched continuously and feeling compelled to restrict activities form a sufficient basis for a well-founded fear of persecution, even though the alien had not been arrested and received a passport to leave the country). Authorities in El Salvador had questioned Borja-Moran, but most of the population was subject to interrogation stops. He testified that during these stops, he was told "to be very careful of my actions" and that "the student was the enemy of the uniform, and they [the army] were waiting for me to commit a mistake so that I would be punished." Yet a few days before Borja-Moran left the country, he was stopped and asked why his cedula had no voting stamp. The authorities accepted his explanation and he was free to go without any restriction of his freedom.
 
 
 22
 The BIA concluded that these incidents of interrogation were isolated instances without further consequences and that "the authorities would have had ample opportunity to apprehend him if that had been their intention." See Rodriguez-Rivera v. INS, 848 F.2d 998, 1006 (9th Cir.1988) (insufficient objective foundation for fear when Rodriguez-Rivera lived undisturbed by authorities for two months and there was no evidence that guerrillas were still interested in him).
 
 
 23
 The BIA's decision cannot be reversed "simply because [the Court] disagree[s] with its evaluation of the facts." Rodriguez-Rivera, 848 F.2d at 1001. The BIA concluded that Borja-Moran did not have a "reasonable fear that he would be in greater danger than any other member of the general population." That conclusion is supported by substantial evidence. Because the BIA's conclusion that Borja-Moran is ineligible for asylum must be affirmed, it follows that the denial of withholding of deportation, with its more stringent standard, must be affirmed as well.
 
 
 24
 The decision of the Board of Immigration Appeals is AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3