**Luis VIDES–VIDES, Petitioner,**

v.

**IMMIGRATION & NATURALIZATION SERVICE, Respondent.**

No. 84–7617.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 5, 1985.

Decided March 5, 1986.

As Amended on Denial of Rehearing April 18, 1986.

Graciela Zavada, El Centro, Cal., for petitioner.

Millicent Y. Clarke, Washington, D.C., for respondent.

Before ANDERSON, BEEZER and BRUNETTI, Circuit Judges.

BEEZER, Circuit Judge:

Petitioner, Luis Vides-Vides, a citizen of El Salvador who entered the United States without inspection, applied for asylum and withholding of deportation. The Immigration Judge (IJ) denied the application, petitioner appealed, and the Board of Immigration Appeals (BIA) dismissed the appeal. Petitioner seeks review of the BIA's decision. We affirm and deny the petition for review.

## I

### BACKGROUND

Vides-Vides is a 30 year old citizen of El Salvador who first entered the United States illegally in 1978. He was deported to El Salvador in June 1979, where he remained for over a year before illegally re-entering the United States in October 1980. In February 1984, the INS again instituted deportation proceedings against Vides-Vides.

On April 5, 1984, a deportation hearing was held in El Centro, California. Although Vides-Vides had been given two previous postponements to obtain an attorney, and had been provided with a list of free legal services in the El Centro area, he appeared at the hearing without a lawyer and expressed some confusion as to why his Los Angeles attorney was not present in the El Centro courtroom. The IJ decided that Vides-Vides had had an adequate opportunity to obtain counsel and proceeded with the hearing. Vides-Vides conceded deportability on the basis of his illegal entry into the United States without inspection. The IJ gave Vides-Vides two weeks to file an application for asylum and withholding of deportation, which he did.

A copy of Vides-Vides' application was sent to the State Department, which advised the IJ that "we believe that the applicant has failed to establish a well-founded fear of being persecuted in El Salvador.... Consequently, the applicant does not appear to qualify for asylum."

On June 12, 1984, a second hearing was held before a different IJ to determine whether Vides-Vides was entitled to asylum. The new IJ began the second hearing by summarizing the proceedings at the first hearing and other matters contained in the record. He then examined Vides-Vides' reasons for leaving El Salvador and the bases for his fear of persecution.

Vides-Vides left El Salvador about the time the civil war began. He testified that he did so because both the military and the various factions engaged in the civil war attempted to pressure young people to join their causes, that he wished to remain neutral and not to join any group, and that he feared for his freedom and safety if he were asked to join a group and refused.

Vides-Vides admitted, however, that he had never had any personal contact or problems with the military whatsoever. On the other hand, he expressed a belief that one of his ten siblings had been killed by the military while Vides-Vides was in the United States, apparently because he did not belong to any political organizations. Vides-Vides admitted, however, that neither he nor any member of his family had witnessed the alleged killing or had direct knowledge concerning it, and that he could not produce any evidence of either the death or its circumstances.

Vides-Vides also testified that only one non-military faction, a group called the F.P.L., had contacted him personally about joining their group. Members of the F.P.L., who Vides-Vides declined to name for fear of retaliation, approached him briefly two or three times in public places and invited him to attend their meetings and listen to their speakers. Vides-Vides declined the invitations, and nobody tried to force him to join that or any other group.

Vides-Vides admitted generally that he had never "been persecuted in any form whatsoever by anybody," and that he had never been threatened or physically mistreated by anyone in his life. He also admitted that he had had no problems with any of the factions either before he left El Salvador the first time or during the sixteen months that he stayed there before returning to the United States. Similarly, he testified that except for his brother, none of his other family members had had any problems with the government after he left. Vides-Vides further stated that he supported his country's government, that he had never openly criticized it, that he lived in areas controlled by the government, and that he was free to leave El Salvador at any time. Finally, when asked if either side would single him out for persecution if he returned to El Salvador, or if anyone would treat him any different-

ly than any other Salvadorian, Vides-Vides claimed that they would but was unable to give any reasons to support the assertion.

In summary, Vides-Vides testified that he left El Salvador because he feared he would be forced to join one of the competing factions engaged in that country's civil war, but that he had never been subjected to any personal or unusual persecution or pressure in that regard. He based his application for asylum solely on fear of persecution for his political opinion, which he expressed as his desire to remain neutral.

The IJ applied the same standard to the application for asylum as to the application for withholding of deportation, and concluded that Vides-Vides had not met his burden of proving that he would be persecuted if he returned to El Salvador. He found that Vides-Vides had never been persecuted, arrested, threatened or forced to do anything in the past, that he has never opposed the government or belonged to any political organization, that he "does not hold a political opinion," and that his fears are based on "pure speculation." The IJ ordered Vides-Vides deported.

Vides-Vides then appealed to the BIA, which concluded that "[w]hether his claim is assessed in terms of demonstrating a 'clear probability,' a 'realistic likelihood,' a 'reasonable probability' or a 'good reason to fear' persecution, we find no adequate demonstration that this alien's fear of persecution is well-founded." The BIA therefore dismissed the appeal. Vides-Vides seeks review of that decision.

## II

## LAW AND STANDARDS OF REVIEW

### A. *Prohibition of Deportation*

■ Under section 243(h) of the Immigration and Nationality Act, the Attorney General is prohibited from deporting an alien whose "life or freedom would be threatened ... on account of ... political opinion." 8 U.S.C. § 1253(h). An alien must show a "clear probability" of persecution to satisfy the requirements of section 1253(h). *INS v. Stevic*, 467 U.S. 407, 104

S.Ct. 2489, 2496, 81 L.Ed.2d 321 (1984). Under the clear probability standard, an alien must show that "it is more likely than not" that he or she will be persecuted. *Id.* 104 S.Ct. at 2498. If the alien can meet this burden of proof, the Attorney General must withhold deportation. *Id.* at 2496 n. 15.

■ We review the BIA's denial of an application for prohibition of deportation under the substantial evidence standard. *Garcia-Ramos v. INS*, 775 F.2d 1370, 1373 (9th Cir.1985); *Bolanos-Hernandez v. INS*, 767 F.2d 1277, 1282 n. 8 (9th Cir.1984).

### B. *Political Asylum*

■ An alien who is unable to demonstrate a "clear probability of persecution" may still be eligible for a *discretionary* grant of asylum if he can show that he is a "refugee" within the meaning of section 208(a) of the Refugee Act of 1980. *See* 8 U.S.C. § 1101(a)(42)(A). That section defines a "refugee" as any person outside his country of nationality or habitual residence who is unwilling to return to that country "because of persecution or a well-founded fear of persecution on account of ... political opinion." *Id.*

■ We review section 208(a) decisions denying asylum under a two-tier standard. First, we must determine whether substantial evidence supports the BIA's determination that an alien has failed to prove a well-founded fear of persecution. If refugee status has been established, we review the BIA's denial of asylum for abuse of discretion. *Garcia-Ramos*, 775 F.2d at 1373; *Bolanos-Hernandez*, 767 F.2d at 1282 n. 9.

## III

## CLEAR PROBABILITY OF PERSECUTION ANALYSIS

Although the prohibition of deportation standard of "clear probability of persecution" under section 243(h), 8 U.S.C. § 1253(h), has not yet been clearly defined, we have attempted to specify the nature

and amount of proof required to meet that standard. "Mere assertions of possible fear" are insufficient to establish a clear probability of persecution. *Shoaee v. INS*, 704 F.2d 1079, 1084 (9th Cir.1983). We have also said that relief under section 1253(h) requires "some factual support", some "concrete evidence", to support the claim that persecution is likely. *Id.; Khalil v. District Director of the INS*, 457 F.2d 1276, 1278 (9th Cir.1972). Each case, however, must be evaluated on its own merits to determine whether the alien's factual support and concrete evidence are sufficient to establish that it is "more likely than not" that he will suffer persecution. *See McMullen v. INS*, 658 F.2d 1312, 1317 (9th Cir.1981).

█ The IJ and the BIA both concluded that Vides-Vides had failed to establish a clear probability of persecution. These decisions are supported by substantial evidence in the record.

Vides-Vides admits that he has never been personally threatened, attacked, coerced or persecuted by either the military or the guerrillas. Although he asserts that his brother was killed by the military because of his refusal to take a side in the civil war, Vides-Vides concedes that neither he nor his family has any direct knowledge or evidence of the death or its circumstances.[1] More importantly, Vides-Vides presented no evidence that his brother's death would be connected with his own likely fate upon return to El Salvador. Vides-Vides did not demonstrate that the circumstances of his brother's apparent death indicated that Vides-Vides himself was likely to suffer persecution, especially in light of the fact that his nine other siblings have continued to live safely in El Salvador. He simply could give no indication that he would be treated any differently than other residents of El Salvador.

In *Chavez v. INS*, 723 F.2d 1431, 1433 (9th Cir.1984), the petitioner claimed that he faced persecution in part because he was a "young urban male neither in the military nor with the guerrillas." We rejected this argument, stating:

[Petitioner's] status as a "young urban male" is not specific enough for political asylum. "There must be some special circumstances present before relief can be granted." *Martinez-Romero v. INS*, 692 F.2d 595, 595–96 (9th Cir.1982). Nor has Lopez set forth any evidence indicating that he has any reason to believe he will in fact be persecuted for his refusal to take sides. *See Sanchez [v. INS]*, 707 F.2d [1523, 1527 (D.C.Cir.1983)]. In addition, Lopez's family has remained in El Salvador and has not been harassed. *See Marroquin-Manriquez v. INS*, 699 F.2d [129, 131 (3d Cir.1983), *cert. denied,* [—— U.S. ——] 104 S.Ct. 3553 [82 L.Ed.2d 855] (1984)]. The tragic and widespread danger of violence affecting all Salvadorians is not persecution under 8 U.S.C. § 1253(h).

723 F.2d at 1434. *Accord Zepeda-Melendez v. INS*, 741 F.2d 285, 290 (9th Cir.1984) ("To the extent that Zepeda [a young urban male] also faces danger because of his noncommitment to either side, his danger is the same as faced by other Salvadorians. It is not specific enough to mandate withholding of deportation.").

There was substantial evidence to support the IJ's and BIA's conclusion that Vides-Vides had not demonstrated a "clear probability" that he would be personally persecuted because of his political opinion if he is returned to El Salvador.[2]

---

**1.** Vides-Vides claimed to have a letter from his family setting forth the facts of his brother's death, but could not produce it in the El Centro courtroom because it was in Los Angeles. He did not explain why he was unable to obtain the letter in the three and a half months between the institution of the deportation proceedings and the asylum hearing. Moreover, he admitted that none of his family members had personal knowledge of the circumstances of the alleged killing.

**2.** Vides-Vides does correctly point out that the IJ erred in stating that he does not hold a "political opinion." *See Bolanos-Hernandez,* 749 F.2d at 1324–25 (decision to remain politically neutral is a political decision). However, since Vides-Vides has failed to show that he will be singled

## IV

### WELL–FOUNDED FEAR OF PERSECUTION ANALYSIS

The Supreme Court has assumed, and we have expressly held, that the well-founded fear standard for asylum under section 208(a), 8 U.S.C. § 1158(a), is "more generous" and "more liberal ... than the clear probability test" applied to petitions for prohibition of deportation under section 243(h), 8 U.S.C. § 1253(h). *Bolanos-Hernandez,* 767 F.2d at 1282–83. *See also INS v. Stevic,* 104 S.Ct. at 2498.

The BIA has often failed to recognize the crucial difference between these two standards when evaluating the petitions of aliens for asylum under section 208(a). When the BIA's decision indicates that it views the "well-founded fear" and "clear probability of persecution" standards as identical, and thereby requires a showing that persecution is "more-likely-than-not" to be eligible for asylum, we have previously held that we must reverse the BIA and remand for consideration under the appropriate standard. *See Cardoza-Fonseca v. INS,* 767 F.2d 1448, 1450, 1453–54 & n. 6 (9th Cir.1985), *cert. granted,* —— U.S. ——, 106 S.Ct. 1181, 89 L.Ed.2d 298 (1986).

In Vides-Vides' case, however, it is apparent that the BIA appreciated the necessity of applying separate and discrete standards. The BIA held:

The respondent ... has not demonstrated that he qualifies for withholding of deportation because of a clear probability of persecution on account of race, religion, nationality, membership in a social group or political opinion within the scope of § 243(h).... See *INS v. Stevic,* [467 U.S. 407] 104 S.Ct. 2489 [81 L.Ed.2d 321] (1984). Neither has the respondent adequately substantiated his claim of a well-founded fear of persecution on account of any of the above-listed reasons under § 208 ... so as to qualify for asylum. Whether his claim is assessed in terms of demonstrating a "clear probability," a ["]realistic likelihood," a "reasonable probability" or a "good reason to fear" persecution, we find no adequate demonstration that this alien's fear of persecution is well-founded.

Although the BIA's decision fails to state explicitly that the asylum standard is "more generous" or "more liberal," this cannot be regarded as a fatal flaw. The utterance of certain magic words by the BIA is not the focus of our inquiry. Rather our concern is with the analysis actually applied by the BIA. In this case, the BIA's decision, read as a whole, reflects its recognition, although not necessarily adoption, of distinctive standards which could be relevant in adjudicating claims of persecution under the two separate statutes.[3] *See Chatila v. INS,* 770 F.2d 786, 790 (9th Cir.1985). The BIA then concluded that

---

out for persecution because of his neutrality, this error was harmless.

**3.** It is also significant that the BIA's decision in this case was rendered prior to its decision in *In re Matter of Acosta,* Interim Dec. No. 2986 (BIA March 1, 1985). In *Acosta,* the BIA firmly adopted the position that there is no meaningful difference between the standards for asylum and withholding of deportation, thereby expressly rejecting the position adopted in this circuit.

Decisions of the BIA rendered prior to the adoption of this approach in *Acosta* need not necessarily be read as definitely rejecting differentiating standards for prohibition of deportation and asylum. Indeed, it is apparent that, at least at that time, the BIA did recognize the possibility of a more lenient standard to be applied to asylum petitions. In *Lopez v. INS,*

775 F.2d 1015 (9th Cir.1985), the BIA's decision, also filed before *Acosta,* expressly stated that the petitioner's asylum claim failed "whether we apply the standard of 'clear probability' or a *lesser standard,* such as a 'good reason'...." *Id.* at 1016 (quoting BIA decision) (Emphasis added).

In light of *Acosta,* it may be appropriate henceforth to require a more explicit statement from the BIA that, even were it to apply a more generous standard such as required in this circuit, it would still deny the asylum petition. But decisions rendered earlier may not reflect the rigid view of *Acosta.* Such a decision thus can be affirmed if it presents *some* indication of a differentiation between the potentially applicable standards, and the BIA finds the petition deficient under any such standard. This is such a case.

Vides-Vides' petition could not be sustained under any relevant standard. We agree.

■ The "well-founded fear" standard includes both a subjective and an objective component. *Hernandez-Ortiz v. INS,* 777 F.2d 509, 513 (9th Cir.1985). A petitioner satisfies the subjective component if he shows that his fear is genuine. *Diaz-Escobar v. INS,* 782 F.2d 1488, 1492 (9th Cir.1986). The objective component is satisfied if persecution is a "reasonable possibility." *Hernandez-Ortiz,* 777 F.2d at 513. "The objective component requires a showing, by credible, direct, and specific evidence in the record, of facts that would support a reasonable fear that the petitioner faces persecution." *Diaz-Escobar,* 782 F.2d at 1492. Additionally, the evidence should be specific enough to indicate that the alien's predicament is appreciably different from the dangers faced by the alien's fellow citizens. *See Zepeda-Melendez v. INS,* 741 F.2d at 290.

■ Vides-Vides' testimony makes it clear that he is in fact afraid to return to El Salvador. However, proof of a sincere and strongly-felt fear is not itself sufficient to establish an alien's eligibility for political asylum under section 1158(a). He must prove his fear is *both* "subjectively genuine and objectively reasonable." *Diaz-Escobar,* 782 F.2d at 1492. Vides-Vides has not been individually threatened because of his political opinions. The record simply fails to indicate that his situation will be any different from the dangers faced by other Salvadorians.

Substantial evidence supports the IJ's and BIA's conclusion that petitioner has failed to establish a well-founded fear of persecution. Therefore, we need not consider whether his request for asylum could have been denied as a matter of discretion.

## V

## PROCEDURAL DUE PROCESS ANALYSIS

Vides-Vides contends that his constitutional due process rights under the Fifth Amendment were violated because a differ-ent IJ presided at his asylum hearing than had presided at his initial deportation hearing, and because he was not represented by counsel. These contentions are without merit.

■ Vides-Vides' consent to the substitution of a new IJ was not required, since the first hearing adduced no evidence other than his admission that he had illegally entered the United States. *See* 8 C.F.R. § 242.8(b). Although the new IJ failed to expressly state that he had familiarized himself with the record in the case as required by 8 C.F.R. § 242.8(b), the failure to do so was harmless error since the IJ began the second hearing by summarizing what went on at and subsequent to the first hearing. There is therefore no question that the new IJ was in fact familiar with the record.

Furthermore, although Vides-Vides' brief is rather unclear on this point, there is no basis for asserting that Vides-Vides was prejudiced by the substitution. *See Nicholas v. INS,* 590 F.2d 802, 809 (9th Cir.1979) ("The alien has been denied the full and fair hearing which due process provides only if the thing complained of causes the alien to suffer some prejudice"). The only possible assertion of prejudice deducible from the brief is that the new IJ failed to reverse earlier rulings by the previous IJ refusing to transfer the case to Los Angeles or grant Vides-Vides yet another extension to obtain an attorney. Since the previous IJ had denied these requests, it is difficult to envision how Vides-Vides was placed in any worse position because of the new IJ. Vides-Vides' constitutional rights were not violated by the hearing.

Indeed, the original IJ had done everything he reasonably could to permit Vides-Vides to obtain counsel. As deportation is "purely a civil action to determine eligibility to remain in this country," not a criminal action to punish past transgressions, *INS v. Lopez-Mendoza,* 468 U.S. 1032, 104 S.Ct. 3479, 3484-85, 82 L.Ed.2d 778 (1984), there is no Sixth Amendment right to appointment of counsel at government expense.

*Rios-Berrios v. INS*, 776 F.2d 859, 862 (9th Cir.1985); *United States v. Gasca-Kraft*, 522 F.2d 149, 152 (9th Cir.1975). Rather section 292 of the Immigration and Nationality Act, 8 U.S.C. § 1362, grants an alien the privilege to representation by counsel at his own expense.

█ Vides-Vides' failure to obtain counsel after four months and two continuances[4] makes apparent that he simply was unable to secure counsel at his own expense. Consequently, the IJ had no option but to proceed to the hearing of evidence on the merits of the case.

Furthermore, Vides-Vides has not proferred any new evidence which he believes counsel would have discovered and properly presented at the hearing.[5] Even had he done so, his proper remedy would be a motion to the BIA to reopen deportation proceedings, citing the absence of counsel as the reason this evidence was not available for presentation at the former hearing. *See Roque-Carranza v. INS*, 778 F.2d 1373 (9th Cir.1985); 8 C.F.R. § 3.2.

### CONCLUSION

The BIA's decision that petitioner does not qualify for asylum or prohibition of deportation is AFFIRMED. The petition for review is DENIED.

---

**4.** In fact, the applicable regulations authorize an IJ to grant only one continuance to permit an alien to obtain counsel. *See* 8 C.F.R. § 242.13; *Rios-Berrios*, 776 F.2d at 862.

**5.** Vides-Vides does note that the letter from his family concerning the death of his brother in El Salvador was left in Los Angeles and not submitted into evidence at the hearing. It is not apparent how the failure to obtain this letter from Los Angeles, despite a delay in deportation proceedings of three-and-a-half months, can be attributed to the absence of counsel. At any rate, as discussed above, the letter would not have significantly added to his testimony on this matter. As no member of his family had any direct knowledge concerning his brother's alleged death or its circumstances, the letter would not have added any support to his petition for asylum or prohibition of deportation.