878 F.2d 385
 Unpublished Disposition
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 
 Ram Chandra CHAUDHARY, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent
 No. 88-7311.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 4, 1989.
Decided June 20, 1989.
 Before FLETCHER, NELSON and WILLIAM A. NORRIS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Ram Chandra Chaudhary ("Chaudhary") challenges the decision of the Board of Immigration Appeal ("BIA") affirming the immigration judge's (IJ's) denial of his application for withholding of deportation under Section 243(h) of the Immigration and Naturalization Act (the Act) and for asylum under Section 208(a) of the Act. He argues that the BIA's decision to deny him withholding of deportation and asylum was not supported by substantial evidence; that the BIA applied the wrong legal standard in assessing his asylum claim; and that he was effectively deprived of his right to counsel. We deny the petition for review.
 
 
 3
 * Chaudhary is a 36 year old native of the Bihar province of India. He is a Hindu, a university graduate and a professional surveyor. In 1977, he participated in a protest against a strict censorship law then in place; the protest was sponsored by the Jan Sangh party, a religious political party to which Chaudhary belonged. He was arrested, beaten, warned not to participate in any future protests, and released.
 
 
 4
 One and one-half years after his release by the police, Chaudhary fled to Iran where he lived for seven years and worked as a surveyor. After traveling through several other countries, Chaudhary entered the United States with the help of Mexican "coyotes" who promised to lead him across the border. Chaudhary argues that, if he returns to India, Hindu community leaders will force him to engage in religious protests against the Sikhs and that the police will then persecute him.
 
 
 5
 On January 8, 1987, a master calendar hearing was held at which time the immigration judge postponed immigration proceedings until January 29, 1987, so that Chaudhary could obtain counsel. Chaudhary appeared without counsel on January 29. On the 29th, the IJ found Chaudhary deportable and scheduled a hearing on his request for asylum and withholding of deportation for October 20, 1987. Chaudhary was also unrepresented at the October 20 hearing. He appealed to the BIA the IJ's denial of asylum and withholding of deportation, which affirmed the IJ's oral decision.
 
 
 6
 We review for substantial evidence the BIA's finding that Chaudhary failed to establish either a clear probability of persecution to support the mandatory withholding of deportation or a well-founded fear of persecution to support eligibility for the discretionary grant of asylum. Sagermark v. INS, 767 F.2d 645, 649 (9th Cir.1985).
 
 
 7
 We review for an abuse of discretion the BIA's decision to deny Chaudhary a discretionary grant of asylum. Id.
 
 
 8
 We review de novo Chaudhary's claim that the BIA reviewed his asylum claim under the wrong legal standard. See Arteaga v. INS, 836 F.2d 1227, 1228 (9th Cir.1988).
 
 
 9
 We also review de novo Chaudhary's claim that he was denied the right to counsel. Colindres-Aguilar v. INS, 819 F.2d 259, 261 (9th Cir.1987). We have jurisdiction pursuant to 8 U.S.C. Sec. 1105a.
 
 II
 
 10
 If a clear probability of persecution is established, prohibition against deportation is mandatory. 8 U.S.C. Sec. 1253(h)(1). The BIA found that Chaudhary had failed to meet the standard for a well-founded fear of persecution and thus necessarily failed to meet the higher standard for a clear probability of persecution. We hold that the BIA's findings are supported by substantial evidence.
 
 
 11
 Chaudhary's claim essentially is that he faces persecution as a result of his desire to remain neutral in the religious/political conflicts between the Hindus and Sikhs. He argues that, if he returns to India, he will be forced to engage in religious protests and thus subject himself to persecution by the police or he will be excommunicated by religious leaders for failing to participate in protests. The parties have not pointed to any authority which squarely addresses the question of whether ostracism resulting from a stance of "neutrality" can qualify as persecution for purposes of the Act. We need not decide whether ostracism may under certain circumstances carry sufficiently severe consequences so as to qualify as persecution, since Chaudhary has failed to establish that the ostracism he fears would carry any severe consequences. At his asylum hearing, Chaudhary testified only that excommunication would be from "religion and from community. If I join another community it is too hard from the rest, from the race, and language and several other factors."
 
 
 12
 Even if we assume that the ostracism Chaudhary fears qualifies as persecution, we must uphold the BIA's finding that Chaudhary lacks a well-founded fear of persecution because the record contains ample evidence suggesting that Chaudhary has no objective basis for his fear of ostracism. See Cardozo-Fonseca v. INS, 767 F.2d 1448, 1452 (9th Cir.1985), aff'd 480 U.S. 421 (1987) (alien must establish an objective basis for his subjective fears). The BIA noted that Chaudhary never testified that he or members of his family have been pressured to join Hindu groups or have been excommunicated. Moreover, Chaudhary testified that his uncle and father live in Bihar free of direct harassment from religious leaders, even though they do not participate in the religious/political conflicts there. Finally, Chaudhary failed to offer a convincing explanation for his contention that he could not avoid the political/religious problems in Bihar by relocating to a different region within India. Chaudhary is a university-educated "middle-class" Hindu, and he has failed to provide substantial reasons why he could not relocate within India.
 
 III
 
 13
 Although the BIA's opinion is somewhat unclear, the BIA appears to concede that Chaudhary is the victim of past persecution and that an alien may qualify for "refugee" status solely on the basis of past persecution. See Desir v. Ilchert, 840 F.2d 723, 729 (9th Cir.1988) ("past persecution, without more, satisfies the requirement of [the statutory provision defining the term "refugee"], even independent of establishing a well-founded fear of persecution"). The BIA then seems to offer two alternative grounds for denying asylum despite the existence of past persecution: (1) Chaudhary is statutorily barred from obtaining "refugee" status because he "firmly resettled" in Iran prior to coming to the United States; and (2) even if Chaudhary qualifies as a refugee, the factors guiding the exercise of the BIA's discretion weigh in favor of the denial of his application for asylum. Since we hold that the BIA did not abuse its discretion in finding that the relevant factors weighed in favor of denying Chaudhary's application for asylum, we need not address the issue of whether Chaudhary is statutorily barred from obtaining refugee status because he firmly resettled in Iran.
 
 
 14
 The BIA has the discretion to grant refugees asylum status. In deciding whether to exercise its discretion to award a refugee asylum status, the BIA must consider the totality of the circumstances. Matter of Pula, Int.Dec. # 3033 (BIA 1987). The factors to be considered include (1) the circumstances surrounding the alien's flight from his country and entry into the United States, such as "whether the alien passed through any other countries or arrived in the United States directly from his country, whether orderly refugee procedures were in fact available to help him in any country he passed through, and whether he made any attempts to seek asylum before coming to the United States. In addition, the length of time the alien remained in a third country, and his living conditions, safety, and potential for long-term residency there are also relevant," id.; (2) the alien's personal ties to the United States; (3) general humanitarian concerns, such as advanced age and poor health; and (4) evidence of hardship to the alien should deportation occur. See id (listing factors). The danger of persecution is the most important factor and "should generally outweigh all but the most egregious of adverse factors." Id. The BIA based its denial of asylum on its findings that Chaudhary lacked a well-founded fear of persecution; Chaudhary spent seven years in Iran after leaving India and prior to entering the United States; Chaudhary was employed as a surveyor in Iran and enjoyed the freedom to travel; and Chaudhary "has no family ties in the United States, and no equities that outweigh the evidence showing that he had a safe haven in Iran, and that he no longer has a well-founded fear of persecution." After carefully reviewing the record, we conclude that the BIA did not abuse its discretion when it denied Chaudhary's application for asylum on the basis of these findings.
 
 IV
 
 15
 Chaudhary next argues that the BIA failed to appreciate the differences between the well-founded fear of persecution and clear probability standards and that we should therefore remand for an evaluation of his asylum claim under the proper standard. We conclude that, read as a whole, the BIA's opinion demonstrates that the BIA appreciated the differences and applied the proper standard. Compare Arteaga v. INS, 836 F.2d 1227, 1229-30 (9th Cir.1988) (court concluded that the BIA had misconstrued the well-founded fear of persecution standard because the BIA relied on a case which held that there was no difference between the well-founded fear of persecution and clear probability standards).
 
 V
 
 16
 Chaudhary's final argument is that he was deprived of his statutory and constitutional right to counsel at his asylum hearing. Since applicants for asylum and withholding of deportation have no right to appointed counsel, an immigration judge's duty is limited to inquiring "whether petitioner waived his right to counsel, and, if not, whether there [is] sufficient cause to grant petitioner more time to obtain counsel." See Reyes-Palacios v. INS, 836 F.2d 1154, 1155-56 (9th Cir.1988) (per curiam).
 
 
 17
 The IJ's decision to proceed with the hearing on October 20, 1987, did not deprive Chaudhary of his right to counsel. As the INS argues, Chaudhary had about 9 months before the October 20, 1987 asylum hearing in which to locate counsel. Further, at the master calendar hearing on January 8, 1987, the IJ apparently counseled Chaudhary as to procedures for obtaining "a free lawyer" through the legal assistance offices. Compare Vides-Vides v. INS, 783 F.2d 1463, 1470 (9th Cir.1986) ("Vides-Vides' failure to obtain counsel after four months and two continuances makes apparent that he simply was unable to secure counsel at his own expense. Consequently, the IJ had no option but to proceed to the hearing of evidence on the merits of the case.").
 
 
 18
 Chaudhary also suggests that the government was responsible for his inability to find free legal counsel because it chose to detain him in a remote region of the country where few lawyers practice (El Centro, California). We have left open the question of when (if ever) the government's decision to detain aliens in remote areas with few lawyers constitutes a deprivation of counsel. See Committee of Central American Refugees v. INS, 795 F.2d 1434, modified, 807 F.2d 769, 770 (9th Cir.1986) (upholding district court's denial of a preliminary injunction against the transfer of aliens to "remote" areas in Northern California, court noted that it has not "yet been shown that the transfers effectively denied access to counsel. Nearly all of the named plaintiffs were shown to have received the assistance of counsel after their transfers.... In the absence of a fully developed trial record, we cannot now decide whether a permanent injunction should issue in this matter."). Since Chaudhary has not presented this court with any evidence that lawyers are generally unavailable to aliens in El Centro beyond the fact that he was apparently unable to retain one, we have no basis for holding that the government abused its discretion in choosing El Centro as the place of his detention. See Rios-Berrios v. INS, 776 F.2d 859, 863 (9th Cir.1985) (suggesting a deferential standard for reviewing the government's choice of locations for detaining aliens, court noted that the transfers of aliens is "within the province of the Attorney General to decide").
 
 
 19
 The petition for review is denied. The IJ concluded that Chaudhary "cannot qualify for voluntary departure because he cannot finance his travel expenses." Since Chaudhary's financial situation may have changed since the IJ reached this conclusion, we remand for reconsideration of Chaudhary's qualifications for voluntary departure.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the Courts of this Circuit except as provided by Circuit Rule 36-3