974 F.2d 1344
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Tetemke Mekonen WOLDESMAYATE, Petitioner,
v.
U.S. IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 91-70073.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 4, 1992.
Decided Sept. 9, 1992.
 
 Before EUGENE A. WRIGHT, CANBY and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Tetemke Mekonen Woldesmayate, a citizen of Ethiopia, challenges the denial of his application for political asylum and waiver of deportation. He also contends that the immigration judge deprived him of his right to counsel by denying his request for a continuance. We deny the petition for review.
 
 DISCUSSION
 I. ELIGIBILITY FOR POLITICAL ASYLUM
 
 3
 Under 8 U.S.C. § 1158(a), the Attorney General has discretion to grant asylum to "refugees." INS v. Cardoza-Fonseca, 480 U.S. 421, 428 n. 5 (1987). The Immigration and Naturalization Act in turn defines a "refugee" as a person who is unable to return to his country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion...." 8 U.S.C. § 1101(a)(42)(A). We review the BIA's factual determination that an alien has failed to prove a well-founded fear for substantial evidence, and will not reverse if the conclusion is substantially reasonable. De Valle v. INS, 901 F.2d 787, 790 (9th Cir.1990). The same standard applies to our review of credibility assessments. See Turcios v. INS, 821 F.2d 1396, 1399 (9th Cir.1987).
 
 
 4
 Woldesmayate presents two possible bases for reversing the denial of political asylum: (1) the decision was not based on substantial evidence; and (2) he retained his original refugee status even after becoming a permanent resident. We consider these issues in turn.
 
 A. Persecution Claims
 
 5
 Woldesmayate contends that: (1) he suffered actual persecution; and (2) his fear of persecution is well-founded within the meaning of the statute. The BIA, however, concluded that the case is not made by the evidence.
 
 
 6
 To establish eligibility for asylum based on a well-founded fear of future persecution, applicants must demonstrate both objective and subjective fear. Estrada-Posadas v. United States INS, 924 F.2d 916, 918 (9th Cir.1991). An applicant's " 'candid, credible, and sincere' testimony" demonstrating a genuine fear satisfies the subjective component. Blanco-Comarribas v. INS, 830 F.2d 1039, 1042 (9th Cir.1987). The objective component requires "credible, direct, and specific evidence in the record, of facts that would support a reasonable fear that the petitioner faces persecution." Rodriguez-Rivera v. United States Dep't of Imm. & Naturalization, 848 F.2d 998, 1002 (9th Cir.1988) (emphasis in original).
 
 
 7
 The record indicates that Woldesmayate claimed to have been jailed and released in 1974, but later stated that the date was 1973. Similarly, he claimed to have left for Sudan in 1974 and 1977. Woldesmayate further stated that he was arrested only once, but at another time claimed that it happened twice. Finally, he did not account for the three years between his alleged release in 1974 and his departure for Sudan in 1977.
 
 
 8
 The BIA allowed for Woldesmayate's communication problems and nevertheless concluded that these inconsistencies and the lack of important details undermined his claims. It particularly stressed his failure to account for the 1974-77 period. Accordingly, substantial evidence supports the BIA's determination that no actual persecution occurred. Similarly, Woldesmayate failed to present "candid, credible and sincere testimony" and thus did not satisfy the subjective component of the well-founded fear standard. See Berroteran-Melendez v. INS, 955 F.2d 1251, 1256-58 (9th Cir.1992) (finding substantial evidence in light of inconsistencies and lack of detail in application).
 
 
 9
 Woldesmayate maintains that the BIA's credibility assessment is unfounded, because that court never observed his demeanor. This argument is without merit. The BIA is entitled to draw derivative inferences from the facts themselves. Cf. Penasquitos Village, Inc. v. NLRB, 565 F.2d 1074, 1078 (9th Cir.1977); see also Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951) (the "substantiality of evidence [in support of the Board's decision] must take into account whatever in the record fairly detracts from its weight"). Moreover, the IJ's credibility findings are of limited benefit to Woldesmayate, because he termed Woldesmayate's description of his offenses "less than candid."
 
 B. Refugee Status
 
 10
 Woldesmayate alternatively contends that he still is entitled to the refugee status conferred in 1982 pursuant to 8 U.S.C. § 1159(a),[1] despite the fact that he was subsequently granted permanent resident status. Under this reasoning, Woldesmayate would presumptively qualify for asylum even though he lost his permanent resident status when the deportation order became final. Woldesmayate thus concludes that the INS now bears the burden of proving that he is not entitled to asylum, and cannot deport him until it terminates this status in accord with 8 C.F.R. § 207.8.
 
 
 11
 This argument is untenable in light of the legislative history of The Refugee Act of 1980. The Senate bill originally provided that refugees admitted under normal flow procedures would be admitted as lawful permanent residents. H.R.Conf.Rep. No. 781, 96th Cong., 2d Sess. 21 (1980), reprinted in 1980 U.S.C.C.A.N. 160, 162. Those entering in emergency situations could be admitted conditionally or as lawful permanent residents. Id. In contrast, the House Amendment provided that all aliens must enter as "refugees" with retroactive adjustment of status after two years. Id. The Conference later modified this provision by allowing adjustment after one year. Id.
 
 
 12
 Senator Edward Kennedy, the Senate bill's chief sponsor, described this process:
 
 
 13
 [T]he Conferees compromised on the House version and established a new "refugee" admission status--different from either the present "conditional entry" or "parolee" status. This new status will end after only one year--rather than two years--after which the refugee can adjust to permanent resident status. This one year "refugee" status would also be counted towards the five-year period required for naturalization.
 
 
 14
 126 Cong.Rec. S3756, 3757 (daily ed. February 26, 1980) (statement of Sen. Kennedy). These statements indicate that Congress only intended refugee status to last one year, and thus refute Woldesmayate's contention. Woldesmayate's status as a refugee ceased, and was supplanted by his status as a permanent resident.
 
 
 15
 Woldesmayate's other arguments are similarly unavailing. Notwithstanding the prior determination, he still bears the burden of proving his eligibility for asylum. See Rebollo-Jovel v. INS, 794 F.2d 441, 448 (9th Cir.1986). Moreover, he has no basis to argue that the INS must affirmatively act to terminate his status under Matter of Garcia-Alzugaray, 19 I. & N. Dec. 407 (1986). In that case, the BIA held that a refugee with less than one year of residence did not receive proper notice under 8 C.F.R. § 207.8. See id. at 408-09. Garcia-Alzugaray does not hold that permanent residents are entitled to this notice, and Woldesmayate's reliance on this case is thus misplaced.
 
 II. RIGHT TO COUNSEL
 
 16
 Woldesmayate further contends that the IJ deprived him of his right to counsel by refusing to grant a continuance to obtain counsel. The INS counters that Woldesmayate: (1) failed to exhaust his administrative remedies; (2) suffered no prejudice; and (3) failed to demonstrate good cause for the continuance. Even assuming that the issue has been properly preserved, Woldesmayate's claim must fail.
 
 A. Prejudice
 
 17
 Woldesmayate's right to counsel is grounded in the Fifth Amendment and 8 U.S.C. § 1362. Failure to accord an alien his statutory right may constitute an abuse of discretion and require a remand. See Castro-Nuno v. INS, 577 F.2d 577, 578-79 (9th Cir.1978). If the prejudice to the alien is sufficiently great, a due process violation may result. In that event, a ruling "impinge[s] upon the fundamental fairness of the hearing in violation of the fifth amendment." Ramirez-Durazo v. INS, 794 F.2d 491, 500 (9th Cir.1986). Woldesmayate's claim will fail if he cannot demonstrate prejudice under either standard. See generally United States v. Cerda-Pena, 799 F.2d 1374, 1377 n. 3 (9th Cir.1986) (court need not reach the constitutional issue if the statutory right was not waived and the failure to accord it prejudiced the petitioner).
 
 
 18
 From the beginning, the IJ took pains to protect Woldesmayate's right to counsel. At the deportation hearing on January 17, 1990, the IJ informed Woldesmayate of his right to counsel. He arranged for Woldesmayate to obtain information about free legal services, and offered to reset the case so that Woldesmayate could obtain a lawyer. Woldesmayate insisted that he wished to speak for himself.
 
 
 19
 The judge thereafter granted two continuances so that Woldesmayate could prepare to address other issues, including his eligibility for asylum and a discretionary waiver of deportation. At his third hearing, Woldesmayate was represented by counsel and the IJ received evidence relevant to the asylum claim as well as the waiver. The BIA considered this asylum evidence in assessing the basis of the alleged fear of persecution.
 
 
 20
 Despite this solicitude for Woldesmayate's rights, he would have us infer a violation because discrepancies existed between his statements before and after representation. Although some differences exist, the BIA made allowance for Woldesmayate's language problems and still doubted his credibility. In light of these facts, we cannot say that the absence of counsel prejudiced Woldesmayate. See Vides-Vides v. INS, 783 F.2d 1463, 1470 (9th Cir.1986) (finding no prejudice in part because alien failed to identify new evidence that counsel could have discovered and presented); cf. Baires v. INS, 856 F.2d 89, 93 (9th Cir.1988) (finding prejudice because alien was denied the opportunity to present witnesses whose testimony could have materially affected the outcome of the case).
 
 B. Good Cause
 
 21
 The Code of Federal Regulations states that the IJ may grant a continuance for good cause shown. 8 C.F.R. § 242.13. The decision to deny a continuance is within the sound discretion of the IJ, and will not be overturned except upon a showing of abuse of discretion. Baires, 856 F.2d at 91.
 
 
 22
 As noted above, the IJ discussed the right to counsel with Woldesmayate at his initial hearing. Woldesmayate appeared without counsel at the subsequent proceeding and offered no explanation as to where his alleged counsel was or why he had not appeared. No notice of appearance had been filed during the intervening two months. Accordingly, no evidence supported Woldesmayate's claim to representation, and he failed to demonstrate good cause for a continuance. In light of these facts, the IJ did not clearly abuse his discretion by denying the continuance. See Vides-Vides, 783 F.2d at 1470.
 
 III. DISCRETIONARY WAIVER OF DEPORTATION
 
 23
 Woldesmayate alternatively contends that he was entitled to a waiver of deportation under 8 U.S.C. § 1182(c). That provision permits a grant of discretionary relief to aliens who have lawfully resided here for seven years. Applicants convicted of serious drug offenses must show outstanding equities in order to qualify. Ayala-Chavez v. INS, 944 F.2d 638, 641 (9th Cir.1991). We review the denial of relief for abuse of discretion, and cannot set aside the decision unless "the board fails to support its conclusions with a reasoned explanation based upon legitimate concerns." Vargas v. United States Dep't of Imm. & Naturalization, 831 F.2d 906, 908 (9th Cir.1987).
 
 
 24
 Woldesmayate maintains that the BIA failed to provide this explanation. But the record indicates that the BIA fully canvassed the equities weighing in Woldesmayate's favor: his eight-year residence, his many friends, his virtually continuous employment, his attempts to learn English, and the hardships anticipated upon his return to Ethiopia. It concluded that these equities were "outstanding," but also noted that the countervailing negative factors were "very serious." The BIA did not find persuasive Woldesmayate's justification for his assault and drug trafficking offense (committed shortly after release from his first imprisonment) "considering the length of the sentences for his assault conviction (apparently his first conviction) and his narcotics conviction." While his prison record for good behavior was "a positive showing," it did not establish reformation or rehabilitation. These statements indicate that the BIA's explanation was reasoned and based upon legitimate concerns. See id. at 909 (upholding denial of relief where the BIA deferred to the IJ's conclusions regarding the seriousness of the offense and the applicant's failure to rehabilitate).
 
 
 25
 Woldesmayate alternatively contends that the BIA's approach effectively bars drug offenders from obtaining relief under section 1182(c). This contention lacks merit. The record indicates that the BIA did not rest its evaluation on the offenses per se, but also considered the length of the sentences imposed and evidence of rehabilitation. The BIA did not abuse its discretion in denying a waiver of deportation.
 
 CONCLUSION
 
 26
 The petition for review is DENIED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 The statute provides:
 (a) Criteria and procedures applicable for admission as immigrant; effect of adjustment.
 (1) Any alien who has been admitted to the United States under section 1157 of this title--
 (A) whose admission has not been terminated by the Attorney General pursuant to such regulations as the Attorney General may prescribe,
 (B) who has been physically present in the United States for at least one year, and
 (C) who has not acquired permanent resident status,
 shall, at the end of such year period, return or be returned to the custody of the Service for inspection and examination for admission to the United States as an immigrant in accordance with the provisions of sections 1225, 1226, and 1227 of this title.
 (2) Any alien who is found upon inspection and examination by an immigration officer pursuant to paragraph (1) or after a hearing before a special inquiry officer to be admissible (except as otherwise provided under subsection (c) of this section) as an immigrant under this chapter at the time of the alien's inspection and examination shall, notwithstanding any numerical limitation specified in this chapter, be regarded as lawfully admitted to the United States for permanent residence as of the date of such alien's arrival into the United States.
 8 U.S.C. § 1159(a).